IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02285-RMR-NRN

HARVEST CHURCH, a Colorado Nonprofit Corporation,

Plaintiff,

v.

RESOUND CHURCH, an Oregon Non-Profit Corporation,

Defendant.

RESOUND CHURCH, an Oregon Non-Profit Corporation,

Counterclaim Plaintiff,

v.

HARVEST CHURCH a/k/a HARVEST WORSHIP CENTER, STEPHEN LEE VALDEZ, VICKIE MAESTAS, and DANIEL VALDEZ,

Counterclaim Defendants.

---

**REPORT AND RECOMMENDATION ON
HARVEST CHURCH'S OPPOSED MOTION FOR REMAND (Dkt. #32)
and
OPPOSED FORTHWITH MOTION TO APPOINT RECEIVER OVER SUBJECT
PROPERTY PURSUANT TO FED. R. CIV. P. 66 (Dkt. #47)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This matter is before the Court pursuant to an Order (Dkt. #48) issued by Judge Regina M. Rodriguez referring Plaintiff/Counterclaim Defendant Harvest Church's ("Harvest") Opposed Motion for Remand (the "Motion for Remand") (Dkt. #58) and Opposed Forthwith Motion to Appoint Receiver Over Subject Property Pursuant to Fed. R. Civ. P. 66 (the "Receivership Motion") (Dkt. #47). Defendant/Counterclaim Plaintiff

Resound Church ("Resound") filed responses (Dkt. ##35 & 55) and Harvest filed replies (Dkt. ##36 & 56).[1]

The Court heard argument on December 15, 2022. (*See* Dkt. #67.) The Court has taken judicial notice of the docket and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court **RECOMMENDS** that the subject motions be **DENIED**.

## BACKGROUND

Harvest commenced this action in the District Court for Adams County, Colorado, on August 16, 2022. (*See* Dkt. #1-2.) Harvest filed a First Amended Complaint ("Amended Complaint") on September 1, 2022. (Dkt. #6.) The next day, Resound filed a Notice of Removal. (Dkt. #1.) The basis for removal was diversity of citizenship under 28 U.S.C. § 1441(b). (*See id.* at 2, ¶ 6.)

This dispute revolves around real property (the "Subject Property") to which the parties, both Christian churches, claim an interest. The factual allegations are somewhat complicated and will be discussed in more detail below as necessary. Briefly, Harvest alleges that it was the owner of the Subject Property. As part of a joint venture, Harvest transferred the Subject Property to Resound for less than its true market value. Resound then squeezed Harvest out of the venture, and now plans to sell the multimillion-dollar Subject Property while denying Harvest any of the proceeds.

---

[1] A supplement/amendment to the motion and a supplemental reply and response thereto were also filed. (*See* Dkt. ##53, 57 & 59.) At the December 15, 2022 hearing, the Court discouraged counsel from clogging the docket with these types of notices and supplements.

Resound, for its part, claims that Harvest merged into and became a congregation of Resound in 2017. Thereafter, Harvest ceased to exist. As part of the merger, Resound purchased the Subject Property from Harvest and title was transferred via a Special Warranty Deed in February 2018. Resound alleges Harvest has fabricated its claim of title to the Subject Property in a last-ditch effort to stop Resound from selling the church property in the summer of 2022.

## MOTION TO REMAND (Dkt. #32)

Harvest asks that the case be remanded to Colorado state court because there is not complete diversity of citizenship. This request should be denied.

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States" where the action is pending. 28 U.S.C. § 1441(a); *see Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005). A federal court has original jurisdiction based on diversity if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). "[T]he statutory formulation 'between . . . citizens of different States' . . . require[s] complete diversity between all plaintiffs and all defendants." *Roche*, 546 U.S. at 89 (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). Courts generally determine diversity based on the citizenship of the parties named in the complaint. *See id.* at 84.

The Amended Complaint alleges that Harvest "is a non-profit entity established Christian Church . . . registered with the Colorado Secretary of State and is physically located in Adams County, State of Colorado," and Resound "is a foreign nonprofit

3

corporation doing business in the State of Colorado, originally registered with the State of Colorado, Secretary of State, now delinquent." (Dkt. #6 at 1.) Resound's Answer to First Amended Complaint and Amended Counterclaim ("Counterclaim") states that it "is an Oregon nonprofit religious corporation with its principal place of business at 1400 NE 48th Avenue, Suite 100, Hillsboro, OR 97124." (Dkt. #61 at 13, ¶ 2.) Thus, from the pleadings, it appears that the parties are diverse.

Moreover, Harvest filed a "Verified Motion/Complaint for Temporary Restraining Order and Preliminary Injunction" in state court on August 16, 2022. (Dkt. #3.) In that sworn filing, Harvest identified Resound as "a foreign entity with locations in Australia New Zealand, and Oregon," and further stated, "Resound does have an Oregon Church, but Resound's leadership is not located in Oregon or anywhere in the US as we confirmed with Resound." (*Id.* at 3, ¶ 10; 13 n.1.)

Despite these allegations and sworn statements, Harvest now argues that complete diversity does not exist because one of the members of Resounds Board of Directors is a Colorado resident. In Harvest's view, this makes Colorado the "nerve center" of Resound's operations.

"[A] corporation is a citizen of its state of incorporation and the state where its principal place of business is located." *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015) (citing 28 U.S.C. § 1332(c)(1)). To determine a corporation's principal place of business, a court applies the "'nerve center' test." *Hertz Co. v. Friend*, 559 U.S. 77, 95 (2010). In applying this test, courts seek to determine "the center of overall direction, control, and coordination" of a corporation, as well as

where the top officers of the corporation are located and where "the bulk of a company's business activities visible to the public take place." *Id.* at 96.

Harvest itself recognizes that Resound is incorporated under the laws of Oregon and its bylaws identify Oregon as its "principal office." (*See* Dkt. #32 at 5.) Pastor Luke Reid, the President of Resound, filed a Declaration (Dkt. #35-1) confirming that Resound's headquarters are located in Hillsboro, Oregon. Thus, Resound is an Oregon citizen.

Harvest cites no authority for the novel proposition that a corporation's "nerve center" is anywhere a single board member might reside. The Court strongly suspects that no such authority exists because Harvest's understanding is contrary to the very concept of a "nerve center," which, by its own terms, is a *single place*. *See Hertz*, 599 U.S. at 95 ("The metaphor of a corporate 'brain,' while not precise, suggests a single location."). The Court rejects Harvest's argument that "Resound's 'nerve center' is its Board of Directors, wherever they are located," as unsupported by case law or common sense.

Harvest's Opposed Motion for Remand (Dkt. #32) should be **DENIED** as the Court has diversity jurisdiction under 28 U.S.C. § 1332.

### RECEIVERSHIP MOTION (Dkt. #47)

Harvest asks the Court to appoint a neutral receiver to manage the Subject Property. Harvest claims that Resound may not be current on its mortgage, and alleges Resound has failed to maintain the property under the terms of a lease agreement it has with tenant New Heights Academy Learning Center ("New Heights"), which is operated by a Nancy Valdez, allegedly a Harvest board member.

5

"A district court may appoint a receiver to take the control, custody, or management of property involved in litigation, to preserve the property, and to receive the rents, issues, and profits thereof pending the ultimate determination of such litigation." *United States v. Solco I, LLC*, 962 F.3d 1244, 1246 (10th Cir. 2020) (quotation marks, alterations, and citation omitted). The receivership's "focus is to safeguard the assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Id.* (quotation marks and citation omitted). "A receiver is an officer of the court, not the parties' agent." *Id.* (quotation marks, alteration, and citation omitted).

Receivership "is an extraordinary equitable remedy that lies in the discretion of the court, justifiable only in extreme situations." *Waag v. Hamm*, 10 F. Supp. 2d 1191, 1993 (D. Colo. 1998). The factors which the Court may consider in exercising its discretion include: "(1) the existence of a valid claim by the moving party; (2) the probability that fraudulent conduct has occurred or will occur to frustrate the claim; (3) imminent danger that property will be lost, concealed, or diminished in value; (4) inadequacy of available legal remedies; (5) lack of a less drastic equitable remedy; and (6) the likelihood that appointment of a receiver will do more harm than good." *Id.*

Here, the factors weigh against the appointment of a receiver. First, while the Court has not yet decided whether Resound's pending Motion for Judgment on the Pleadings (Dkt. #27) should be granted, it must acknowledge that the Subject Property was conveyed via Special Warranty Deed to Resound nearly five years ago. This presents a high hurdle for Harvest to overcome to claim title to the Subject Property. Moreover, as Resound points out, neither its lender nor its tenant is a party to this

6

action, raising a question of standing. Most of the arguments about lack of upkeep have to do with alleged problems for the tenant school. If New Heights school has concerns about the maintenance of the Subject Property, it has recourse under its lease. To the extent that Harvest claims an entitlement to the New Heights rental payments, the Court credits Resound's argument that Resound has collected 100% of the lease proceeds since the Subject Property was transferred, apparently without objection from Harvest. Similarly, Resound's lender has not evidenced any interest in the appointment of a receiver to protect any legal interest it may have in the Subject Property.

Second, Harvest does allege that Resound fraudulently obtained title to the Subject Property, but this is hotly disputed. Indeed, Resound's Counterclaim alleges Harvest and its agents are liable for slander of title, intentionally interfering with the sale of the Subject Property, and breaching the warranties of title.

As to the third factor, the Court agrees with Resound that there is no imminent danger exists that Subject Property will be lost, concealed, or diminished in value. Resound is, on paper, the legal owner of the Subject Property and it is undisputed that Resound has been trying to sell it for some time. Therefore, Resound has a material interest in the Subject Property and in maintaining or increasing its value. In fact, the Subject Property was going to be sold in August 2022 for $2,800,000. That fell through, Resound alleges, because of this lawsuit. Now, Harvest claims that the Subject Property's value has increased over $1 million, and is worth approximately $4,000,000. Moreover, the total monetary amount of repairs and delinquent bills cited by Harvest is relatively small (a little over $5,000) compared to the value of the property as a whole. And Resound has represented that it has re-enlisted the services of a property manager

to make weekly visits to confirm the Subject Property is properly maintained. In short, the Court finds little reason to believe that the Subject Property will significantly diminish in value during the pendency of this litigation.

Fourth, Resound asserts, and the Court agrees, that monetary damages and equitable relief are an adequate remedy.

Finally, the costs of hiring and paying a receiver outweighs any harm identified by Harvest, most of which is relatively minor and speculative in nature.

Harvest has not demonstrated that Resound's alleged failure to maintain the Subject Property is so extreme that a receivership is warranted. The Receivership Motion (Dkt. #47) should be **DENIED**.

## CONCLUSION

In light of the foregoing, it is hereby **RECOMMENDED** that Harvest Church's Opposed Motion for Remand (Dkt. #32) and Opposed Forthwith Motion to Appoint Receiver Over Subject Property Pursuant to Fed. R. Civ. P. 66 (Dkt. #47) be **DENIED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn***, 474 U.S. 140, 148–53**

**(1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Date: December 21, 2022

_____
N. Reid Neureiter
United States Magistrate Judge