IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02285-RMR-NRN

HARVEST CHURCH, a Colorado Nonprofit Corporation,

Plaintiff,

v.

RESOUND CHURCH, an Oregon Non-Profit Corporation,

Defendant.

RESOUND CHURCH, an Oregon Non-Profit Corporation,

Counterclaim Plaintiff,

v.

HARVEST CHURCH a/k/a HARVEST WORSHIP CENTER, STEPHEN LEE VALDEZ, VICKIE MAESTAS, and DANIEL VALDEZ,

Counterclaim Defendants.

---

**REPORT AND RECOMMENDATION ON
HARVEST CHURCH'S MOTION TO JOIN ADDITIONAL PARTIES PURSUANT TO
Fed. R. Civ. P. 13(h),19, AND 20, AND C.R.S. § 38-35-114 (Dkt. #77), and
MOTION FOR LEAVE TO AMEND ITS COMPLAINT PURSUANT TO
D.C.COLO.LCivR 15.1(b) (Dkt. #78)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This matter is before the Court pursuant to an Order (Dkt. #79) issued by Judge Regina M. Rodriguez referring Plaintiff/Counterclaim Defendant Harvest Church's ("Harvest") Motion to Join Additional Parties Pursuant to Fed. R. Civ. P. 13(h),19, and 20, and C.R.S. § 38-35-114 ("Motion to Join," Dkt. #77), and Motion for Leave to Amend its Complaint Pursuant to D.C.COLO.LCivR 15.1(b) ("Motion to Amend," Dkt. #78).

Defendant/Counterclaim Plaintiff Resound Church's ("Resound") filed a combined response to the motions (Dkt. #88), and Harvest filed replies (Dkt. #93 & 94). On April 6, 2023, the Court heard argument from the parties. Now, having taken judicial notice of the Court's file, considered the applicable Federal Rules of Civil Procedure and case law, and as set forth fully below, the Court **RECOMMENDS** that Harvest's motions (Dkt. ##77 & 78) be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The Court has set forth the procedural and factual background of this case in its earlier Recommendations (*see* Dkt. ##65 & 141) and will repeat it here only as necessary. In brief, this lawsuit revolves around who owns a large church facility (the "Subject Property") located in Federal Heights, Colorado. Harvest alleges that it is the owner of the Subject Property, despite the deed to the property being in Resound's name. In 2018, as part of an alleged joint venture or partnership with Resound, Harvest transferred the Subject Property to Resound for less than its true market value. Harvest says that Resound then squeezed Harvest out of the venture and is planning on cutting Harvest out of any proceeds it obtains from selling or leasing the Subject Property.

In its First Amended Complaint (Dkt. #6), Harvest asserted the following claims:

(1) a declaratory judgment to void Resound's deed due to insufficient consideration;

(2) a declaratory judgment voiding the property transfer transaction due to violation of the statue of frauds and due to negligent misrepresentation;

(3) breach of contract for breach of the purchase agreement;

(4) breach of contract for breach of an alleged joint venture between Harvest and Resound;

(5) breach of contract for breaching the duty of good faith and fair dealing;

(6) fraud/fraudulent conveyance, alleging that Resound made misrepresentations as part of a scheme to defraud Harvest and divest Harvest of the Subject Property;

(7) unjust enrichment, claiming that Resound received a benefit (presumably the Subject Property) under circumstances that would make it unjust for Resound to retain the benefit without paying; and

(8) for quiet title, asking that the Court declare the special warranty deed void and vesting title in Harvest.

Resound brings counterclaims (*see* Dkt. #61) against Harvest and its leadership (Danny Valdez, Steve Valdez, and Vickie Maestas) for:

(1) slander of Resound's title to the Subject Property;

(2) intentional interference with contract relating to Resound's proposed sale of the Subject Property that fell apart due to this lawsuit;

(3) breach of the warranties of title against Harvest;

(4) aiding and abetting breach of warranties of title against the Valdezes and Ms. Maestas;

(5) quiet title; and

(6) declaratory judgment that Resound is the true, rightful, and sole owner of the Subject Property.

On February 2, 2023, Harvest filed the subject motions (Dkt. ##77 & 78), in which it seeks leave to amend its complaint to assert three additional claims (for fraud in the

inducement, constructive fraud, and constructive trust), and add several other parties, including individual board members of Resound: Luke Reid, David Crocker, David Schaal (a non-diverse party), and Anthony Nash; and, as "interested parties," the lender, CDF Capital a/k/a Church Development Fund ("CDF"), and the Adams County Colorado Treasurer and Public Trustee, Alex Villagran ("Public Trustee," a non-diverse party).

Resound partially opposes the subject motions. It argues that Harvest has failed to allege sufficient facts or a plausible legal basis for personal liability of Resound individual board members Crocker, Nash, and Schaal[1]; that the proposed fraudulent misrepresentation claims fail as a matter of law; that Harvest's "constructive trust" theory is not available in this dispute; and that joinder of CDF and the Public Trustee should not be permitted. (*See generally* Dkt. #88.)

After holding a day-long evidentiary hearing, the Court issued a Report and Recommendation on May 11, 2023 (*see* Dkt. #141) on several other motions, including Harvest's motion for preliminary injunction and Resound's motion for judgment on the pleadings. The crux of that Recommendation is that title to the Subject Property should be deemed to rest exclusively with Resound. As discussed in more detail below, if adopted, the Recommendation will dispose of many of Harvest's claims as asserted in its original pleading and its proposed Second Amended Complaint.

---

[1] Resound appears to only oppose the amendment of claims to add Luke Reid as a Defendant in the two fraud claims (Sixth and Ninth Claims).

4

## LEGAL STANDARDS

### Motion to Amend and Futility

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Leave to amend shall be freely granted when justice so requires. *See, e.g.*, *Bellairs v. Coors Brewing Co.*, 907 F. Supp. 1448, 1459 (D.Colo.1995). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the Court may exercise its discretion to deny a motion to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by previously allowed amendments, or futility of the amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal . . . . The relevant standard in determining whether claims are futile is the same standard that is applied to a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Dorough v. Am. Family Mut. Ins. Co.*, No. 15-cv-02388-MSK-KMT, 2016 WL 1426968, at *2 (D. Colo. Apr. 11, 2016).

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." Id. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citation omitted).

6

**Joinder**

As noted above, Harvest seeks to amend its pleading to add claims against several new parties, some of whom would destroy diversity and therefore compel remand to Colorado state court. But "the joinder of a resident defendant against whom no cause of action is pled, or against whom there is in fact no cause of action, will not defeat removal." *Frontier Airlines, Inc. v. United Air Lines, Inc.*, 758 F. Supp. 1399, 1403 (D. Colo. 1989). In other words, if the plaintiff fails to state a cause of action against the defendant who defeats diversity, the joinder of the resident defendant is considered "fraudulent," and removal is proper. *Id.*

Resound bears the burden of proving fraudulent joinder. *Frontier Airlines, Inc.*, 758 F. Supp at 1404. To do so, it must show "either that there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court; or that there has been outright fraud in plaintiff's representations as to jurisdictional facts." *Id.* at 1403. "The burden on defendant is high; its presentation must be one that compels the conclusion that the joinder is without right and is made in bad faith." *Id.* at 1404.

## ANALYSIS

**First, Second, and Eighth Claims**

In its Recommendation of May 11, 2023, the Court determined that title of the Subject Property rests solely with Resound. (*See* Dkt. #141 at 40.) This automatically narrows the scope of the Court's analysis here because, based on the Court's prior Recommendation, several of Harvest's claims in the proposed Second Amended

7

Complaint are plainly subject to dismissal under Rule 12 and are therefore futile. Those claims are:

- "First Claim for Relief: Declaratory Judgment – Void Contract and Void Deed Due to Insufficient Consideration - Against Resound";

- "Second Claim for Relief Declaratory Judgment – Defective Special Warranty Deed Due to Violation of The Statute of Frauds and Negligent Misrepresentation Using Fraud - Against Resound and Luke Reid"; and

- "Eighth Claim for Relief – Quiet Title Action - Against Resound, CDF Capital, an Interested Party Defendant, and Alex Villagran, Adams County Colorado Public Trustee, an Interested Party Defendant."

As Harvest's quiet title claim is the only one that involves "interested parties" CDF and the Public Trustee, the Motion to Join with respect to these parties should be denied.

**Sixth Claim**

Similarly, Harvest's Sixth Claim for fraudulent conveyance against Resound and Luke Reid alleges that the warranty deed is void due to fraud in the factum, which applies where "a person has been fraudulently deceived about the nature of a document, so that he or she is excusably ignorant about what has been signed." *Delsas ex rel. Delsas v. Centex Home Equity Co., LLC*, 186 P.3d 141, 144 (Colo. App. 2008) (quoting *Svanidze v. Kirkendall*, 169 P.3d 262, 266 (Colo. App. 2007)). The Court has recommended that title is vested in Resound. As finding for Harvest on this claim would necessarily affect title to the Subject Property, this claim is foreclosed by the Court's May 11, 2023 Recommendation.

8

**Tenth and Eleventh Claims**

The Court has also rejected Harvest's argument that the equitable remedy of a constructive trust be imposed with respect to Subject Property. "A constructive trust is a remedial device designed to prevent unjust enrichment." *Mancuso v. United Bank of Pueblo*, 818 P.2d 732, 737 (Colo. 1991). "In general, 'a constructive trust is imposed . . . because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property.'" *Id.* (quoting Restatement (Second) of Trusts, ch. 12, introductory note at 326 (1959)). "Some instances in which a constructive trust may be imposed are when property is obtained by fraud, duress, or abuse of confidential or fiduciary relationship." *Id.* at 737–38.

The Court was not persuaded that the "very friendly relationship between Luke Reid and Steve Valdez rose to the level of a confidential relationship that allowed Luke Reid to take unfair advantage or exert undue influence." (Dkt. #141 at 34.) The Court also declined to impose a constructive trust because doing so would require the Court to scrutinize the relationship of two pastors and thus "tread dangerously close to the line which prohibits delving into and assessing the ecclesiastical and spiritual relationships within a church." (*Id.* at 35.)

With this in mind, Harvest's proposed Tenth and Eleventh Claims for constructive fraud and constructive trust are futile. If, as the Court has already determined, Steve Valdez did not have a confidential relationship with Luke Reid, with whom he had developed a personal friendship, such a relationship obviously cannot be said to have existed with Resound board members Crocker, Schaal, and Nash, who are not alleged to have been close, personal friends of Steve Valdez. Moreover, both claims would

9

necessitate the Court delving into the ecclesiastical and spiritual relationship between Luke Reid and other Resound board members and Steve Valdez, which violates the "neutral principles" approach Colorado has adopted to the resolution of church property disputes. *See Bishop and Diocese of Colo. v. Mote*, 716 P.2d 85 (Colo. 1986).

**Fourth, Fifth, and Seventh Claims Against Nash, Schaal, and Crocker**

Next, the Court agrees with Resound that Harvest's claims for individual liability against proposed parties Nash, Schaal, and Crocker (the Fourth, Fifth, and Seventh Claims) are subject to dismissal under Rule 12(b)(6).

Nash, Schaal, and Crocker are Resound board members. Nash is "the secretary who handles all the financial aspects, including financial reports and accounting for Resound," and "signed and endorsed an email to the church congregation that decimated the church congregation." (Dkt. #78-1 ¶ 31.) Schaal "became lead pastor of the Denver campus after Steve Valdez resigned and as a board member approved the slanderous emails sent by David Crocker to a congregation of 1700 persons . . . ." (*Id.* ¶ 32.) Crocker, as Resound's Global Executive Pastor "oversees all the management and financial aspects of the Church globally," and "directed emails to the Denver congregation that are material to some of the claims in this lawsuit." (*Id.* at 5.) Harvest generally alleges that Nash, Schaal, and Crocker "are jointly and severally individually liable for their own acts and those of Resound in both omission and commission, along with Luke Reid. They all knew or should have known of the fraudulent inducements and fraudulent misrepresentations but chose to stay as board members and approve these acts before the lawsuit started." (*Id.* ¶ 33.)

10

Harvest's Fourth Claim is for breach of oral contract regarding what it calls the two church's "joint venture," and its Fifth Claim is for breach of the contractual obligation of good faith and fair dealing. However, neither Nash, Schaal, nor Crocker are alleged to have been parties to any contract with Harvest. Rather, Harvest alleges that Luke Reid, on behalf of Resound, entered into an oral agreement to collaborate in the joint venture with Harvest. (*See id.* ¶ 120 ("Harvest and Resound had a constructive oral contract for the Joint Venture, which was subsequently breach by Defendant.").) In other words, Harvest had no contractual relationship with Resound's individual board members. "It is axiomatic that an individual not a party to a contract may not be held liable for a breach of that contract." *Worman v. Farmers Co-op. Ass'n*, 4 F. Supp. 2d 1052, 1054 (D. Wyo. 1998).

Although Harvest alleges in both claims that Crocker, "on behalf of the board members," defamed Steve Valdez in an email to the Resound Denver congregation, it does not bring a claim against Crocker either for defamation or for tortiously interfering with Harvest's contractual relationship with Resound. As Crocker was not a party to any contract with Harvest or Valdez, his allegedly defamatory email cannot form the basis of individual liability for Resound's breach of contract.

Harvest's Seventh Claim for unjust enrichment runs into similar problems. In Colorado, a plaintiff seeking recovery for unjust enrichment must prove: (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying. *See DCB Constr. Co. v. Central City Dev. Co.*, 965 P.2d 115, 119–20 (Colo. 1998). Unjust enrichment is a "claim in quasi-contract for money damages based upon principles of restitution." *Id.* at 118.

Here, as noted above, Harvest alleges that *Resound* breached the oral joint venture agreement and unfairly obtained a benefit at Harvest's expense in the form of the warranty deed to the Subject Property. The alleged benefit to Resound's board members in the form of the reimbursement of their expenses is too attenuated to maintain an unjust enrichment claim. Put differently, if Harvest recovers on its unjust enrichment claim (in the event its breach of contract claim fails for whatever reason), it can obtain restitution against Resound itself, not from Resound's board members.

**Ninth Claims Against Luke Reid**

Finally, Resound argues that Harvest's Ninth claim against Luke Reid for fraud in the inducement does not meet Rule 9(b)'s demand that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." (Emphasis added.) In the "paradigmatic" case of *Trussell v. United Underwriters, Limited*, the Court explained that Rule 9(b) "requires identification of the circumstances constituting fraud or mistake." 228 F. Supp. 767, 774–75 (D. Colo. 1964); *see also Noland v. Gurley*, 566 F. Supp. 210, 215–16 (D. Colo. 1983). "More specifically," the Tenth Circuit "requires a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)), *cert. denied*, 531 U.S. 926 (2000). Rule 9(b) does not, however, "require the pleading of detailed evidentiary matter, nor does it require any particularity connection with an averment of intent, knowledge, or condition of mind." *Trussell*, 228 F. Supp. at 774.

A sufficient allegation of fraudulent inducement requires the plaintiff to advance facts demonstrating each of the following elements: (1) the defendant's misrepresentation of a material fact, (2) the plaintiff's reliance on that misrepresentation, (3) the plaintiff's reliance on the misrepresentation was justifiable, and (4) justifiable reliance resulted in damage to the plaintiff. *J.A. Walker Co. v. Cambria Corp.*, 159 P.3d 126, 132 (Colo. 2007) (Hobbs, J., dissenting). The Court cannot agree that Ninth Claim does not adequately allege that Luke Reid made false statements or misrepresentations to Steve and Danny Valdez that they justifiably relied on to their detriment. However, only one set of those allegedly false statements are actionable in this lawsuit.

The Ninth Claim asserts that Resound and Luke Reid fraudulently induced Harvest to enter into the joint venture, and later to persuade Steve Valdez to temporarily resign, by making false promises to pay Pastors Danny and Steve Valdez lifetime emeritus payments of $50,000 per year, which they contend are practically uncancellable, only to not make any payments to Steve Valdez at all and to stop making payments to Danny Valdez after this lawsuit was commenced. This is sufficient to state a claim grounded in fraud under Rule 8 and 9.

However, to the extent the Ninth Claim seeks to void the warranty deed because Luke Reid concealed the conveyance as a mere "refinancing," such a claim cannot be maintained in light of the Court's earlier Recommendation that judgment on Harvest's claim to quiet title be entered against Harvest and in favor of Resound.

## CONCLUSION

For the reasons outlined above, it is hereby **RECOMMENDED** that Harvest Church's Motion to Join Additional Parties Pursuant to Fed. R. Civ. P. 13(h),19, and 20, and C.R.S. § 38-35-114 (Dkt. #77), and Motion for Leave to Amend its Complaint Pursuant to D.C.COLO.LCivR 15.1(b) (Dkt. #78) be **GRANTED IN PART** and **DENIED IN PART** such that the only claims from Harvest's proposed Second Amended Complaint that proceed are:

- Third Claim for Relief Breach of Contract – Purchase Sale Agreement - Against Resound and Luke Reid;

- Fourth Claim for Relief Breach of Oral Contract – Joint Venture - Against Resound And Luke Reid;

- Fifth Claim for Relief – Breach of Good Faith and Fair Dealing - Against Resound, Luke Reid;

- Seventh Claim for Relief – Unjust Enrichment - Against Resound and Luke Reid; and

- Ninth Claim for Relief – Fraud in The Inducement Against Resound and Luke Reid.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file**

**and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Date: May 24, 2023

_____
N. Reid Neureiter
United States Magistrate Judge