**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 22-cv-002285-RMR-NRN

HARVEST WORSHIP CENTER, a Colorado Nonprofit Corporation,

     Plaintiff,

v.

RESOUND CHURCH, an Oregon Non-Profit Corporation,

     Defendant,

RESOUND CHURCH, an Oregon Non-Profit Corporation,

     Counterclaim Plaintiff,

v.

HARVEST CHURCH a/k/a HARVEST WORSHIP CENTER, STEPHEN LEE VALDEZ, VICKIE MAESTAS, and DANIEL VALDEZ,

     Counterclaim Defendants.

---

**ORDER ADOPTING MAGISTRATE JUDGE RECOMMENDATION [ECF 149] REGARDING HARVEST CHURCH'S MOTION TO JOIN ADDITIONAL PARTIES [ECF 77] AND HARVEST CHURCH'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT [ECF 78]**

---

On May 24, 2023, at ECF No. 149, Magistrate Judge N. Reid Neureiter issued a Recommendation on Plaintiff/Counterclaim Defendant Harvest Worship Center's ("Harvest") Motion to Join Additional Parties Pursuant to Fed. R. Civ. P. 13(h), 19, and 20, and C.R.S. § 38-35-114 ("Motion to Join"), ECF No. 77, and Harvest's Motion for Leave to Amend its Complaint Pursuant to D.C.COLO.LCivR 15.1(b) ("Motion to

Amend"), ECF No. 78. Magistrate Judge Neureiter recommends that Harvest's motions be granted in part and denied in part. Resound Church ("Resound") filed a partial objection to the Recommendation, ECF No. 155. Harvest filed an objection to the Recommendation, ECF No. 156. The Court has received and considered the Recommendation, the Objections, the record, and the pleadings. After de novo consideration, the Court **OVERRULES** the Objections and **ADOPTS** the Recommendation.

## I.    BACKGROUND

The Court has set forth the procedural and factual background of this case in its earlier Orders and repeats itself only as necessary here. *See* ECF Nos. 168, 169.

This is a dispute over a church facility located in Federal Heights, Colorado (the "Subject Property"). Steve Valdez was once the pastor of Harvest, which owned the Subject Property. Luke Reid ("Reid"), pastor of Resound, and Steve Valdez were close friends for many years. In 2017, Steve Valdez and Reid decided to work together to operate a new church, Resound Church Denver, on the Subject Property. In conjunction with this collaboration, the Harvest board voted to sell the Subject Property to Resound. Thereafter, Harvest, through Steve Valdez, conveyed the Subject Property to Resound via special warranty deed in 2018. Harvest ceased to exist as a separate congregation and all Harvest employees became Resound employees.

Several years later, Steve Valdez and Reid had a falling out over Steve Valdez's commission of what has been called a "moral failure." As a result, Steve Valdez resigned from Resound Church Denver. As the relationship between the parties

collapsed, so did Resound Church Denver's congregation. As a result, Resound decided to sell the Subject Property in 2021. At that point, Harvest (consisting only of the Valdez family) took action, asserting that it is the rightful owner of the Subject Property. The parties have been in litigation ever since.

In its First Amended Complaint, ECF No. 6, Harvest asserted the following claims against Resound:

(1) a declaratory judgment to void Resound's deed due to insufficient consideration;

(2) a declaratory judgment voiding the property transfer transaction due to violation of the statue of frauds and due to negligent misrepresentation;

(3) breach of contract for breach of the purchase agreement;

(4) breach of contract for breach of an alleged joint venture between Harvest and Resound;

(5) breach of contract for breaching the duty of good faith and fair dealing;

(6) fraud/fraudulent conveyance, alleging that Resound made misrepresentations as part of a scheme to defraud Harvest and divest Harvest of the Subject Property;

(7) unjust enrichment, claiming that Resound received a benefit (presumably the Subject Property) under circumstances that would make it unjust for Resound to retain the benefit without paying; and

(8) for quiet title, asking that the Court declare the special warranty deed void and vesting title in Harvest.

Resound brings counterclaims, ECF No. 61, against Harvest and its leadership (Danny Valdez, Steve Valdez, and Vickie Maestas) for:

(1) slander of Resound's title to the Subject Property;

(2) intentional interference with contract relating to Resound's proposed sale of the Subject Property that fell apart due to this lawsuit;

(3) breach of the warranties of title against Harvest;

(4) aiding and abetting breach of warranties of title against the Valdezes and Ms. Maestas;

(5) quiet title; and

(6) declaratory judgment that Resound is the true, rightful, and sole owner of the Subject Property.

Harvest also asserted counterclaims, ECF No. 71, against Resound and its board members, Luke Reid, David Crocker, David Schaal, and Anthony Nash (their inclusion was subject to the Court's ruling on its Motion for Joinder) for:

(1) breach of contract;

(2) tortious interference of business relations;

(3) defamation (libel and slander).

Harvest filed the subject motions, ECF Nos. 77, 78, for joinder to add as defendants Reid and Resound's individual board members – David Crocker ("Crocker"), David Schaal ("Schaal") (a non-diverse party), and Anthony Nash ("Nash"); and, as "interested parties," the lender, CDF Capital a/k/a Church Development Fund ("CDF"), and the Adams County Colorado Treasurer and Public Trustee, Alex Villagran ("Public Trustee") (a non-diverse party). Harvest seeks leave to amend and file its proposed Second Amended Complaint with its new and revised claims and additional parties.

Resound partially opposes the subject motions, ECF No. 88. Resound argues that Harvest has failed to allege sufficient facts or a plausible legal basis for the personal liability of Resound's individual board members, that the proposed fraudulent misrepresentation claims fail as a matter of law, that Harvest's constructive trust and fraud theories are not available in this dispute, and that joinder of CDF and the Public Trustee should not be permitted.

On May 24, 2023, Magistrate Judge Neureiter issued his Recommendation, ECF No. 149, recommending that the subject motions be granted in part and denied in part.

## II.     PROCEDURAL POSTURE

This contentious suit has involved a great deal of motions practice on various issues. After careful consideration—and conducting an evidentiary hearing—Magistrate Judge Neureiter issued three Recommendations (including this one) concerning seven pending motions. The Court adopted the first Recommendation, ECF No. 65, and denied Harvest's motion for remand and its request for a receiver. ECF No. 168. In denying Harvest's motion for remand, the Court ruled that it has diversity jurisdiction. *Id.*

The Court also adopted the second Recommendation, ECF No. 141, and ruled that under black-letter property law in Colorado the special warranty deed is controlling and conclusively resolves the title question. ECF No. 169. Therefore, the Court ruled that, as a matter of law, title to the Subject Property rests exclusively with Resound. *Id.*  The Court also considered and rejected Harvest's constructive trust theory. *Id.*

Now, the Court considers Magistrate Judge Neureiter's third Recommendation, ECF No. 149. As a result of the recent Orders, the landscape of the case has changed and

narrowed since Harvest filed the subject motions. Crucial to this Order are the Court's recent rulings that (1) it has diversity jurisdiction over this matter (because some of the parties Harvest seeks to add would destroy diversity), and (2) title to the Subject Property rests exclusively with Resound (because several of Harvest's claims in its proposed Second Amended Complaint are based on Harvest's claim to title). Accordingly, this Order reflects the current state of the case.

### III.   LEGAL STANDARD

#### A. Standard of Review

The Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific, timely objection has been made, and it may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 626(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *see United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.").

#### B. Motion to Amend

Under Federal Rule of Civil Procedure 15(a), after a party has amended its pleading once as a matter of course, "a party may amend its pleading only with the opposing

party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). It is within the discretion of the Court to grant or deny leave to amend, *Foman v. Davis*, 371 U.S. 178, 182 (1962), and "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2). "Refusing leave to amend is generally only justified upon a showing of undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party, or futility of amendment, etc." *Castleglen, Inc. v. Resol. Tr. Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (citing *Foman*, 371 U.S. at 182). "The non-moving party bears the burden of showing that the proposed amendment is . . . futile." *Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1151 (D. Colo. 2020) (Wang, Mag. J.).

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1230 (10th Cir. 2017) (quoting *Barnes v. Harris*, 783 F.3d 1185, 1197 (10th Cir. 2015)). "Accordingly, . . . [the Court] consider[s] the sufficiency of the . . . claims that [the plaintiff] s[eeks] to add in [the] Second Amended Complaint." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv.'s Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] court must accept as true all of the allegations contained in a complaint." *Id.* However, legal conclusions need not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### C.  Joinder

Harvest purports to join the parties pursuant to both Rule 19 and Rule 20. Rule 19 governs required joinder. When applying Rule 19, a district court must first determine whether the absent party is necessary to the lawsuit and, if so, whether joinder of the absent party is feasible. *See* Fed. R. Civ. P. 19(a). An absent party is necessary to a suit if, (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. *Id*. Rule 20 governs permissive joinder. Joinder is proper under Rule 20(a)(2) if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Under 28 U.S.C. § 1447(e), "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." A court considers four factors when determining whether joinder and remand is proper under § 1447(e): "(1) whether the amendment is intended to destroy federal jurisdiction, (2) whether the plaintiff was dilatory in filing the motion, (3) whether the plaintiff would be significantly

injured if the motion to amend were denied, and (4) any other equitable factors."
*Pacheco v. Const. Nursing & Rehab. Ctr. LLC*, No. 21-cv-00875-DDD-KMT, 2021 WL 5548303, at *2 (D. Colo. July 6, 2021) (citing *Telecom Decision Makers, Inc. v. Access Integrated Networks*, Inc., 654 F. App'x 218, 221 (6th Cir. 2016)).

A fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds. *Alexander v. Elect. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). However, if the Court finds that "there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants" the Court must remand the action to state court. *Id.*

## IV.   ANALYSIS

### A.  Harvest's Objections to Reliance on Determination of Title to the Subject Property

Harvest argues that Magistrate Judge Neureiter erred by relying on the determination that title to the Subject Property rests with Resound as the basis for concluding that Harvest's proposed first, second, sixth, eighth, and ninth (in part) claims are subject to dismissal and that amendment with respect to these claims is therefore futile. *See* ECF No. 156 at 2. In its objection, Harvest attempts to incorporate its previous objection to Magistrate Judge Neureiter's title determination. *Id.* However, as explained above and in its Order, ECF No. 169, the Court has overruled Harvest's

previous objection and determined that title to the Subject Property rests exclusively with Resound as a matter of law.

Therefore, upon de novo review, the Court agrees with Magistrate Judge Neureiter that Harvest's proposed claims related to its assertion of title over the Subject Property are "plainly subject to dismissal under Rule 12 and are therefore futile." ECF No. 149 at 8. Thus, the Court exercises its discretion to deny leave to amend and add Harvest's first, second, sixth, eighth, and ninth (in part) claims for relief. Additionally, the Court agrees with Magistrate Judge Neureiter that the Motion to Join with respect to CDF and the Public Trustee should be denied, because Harvest only sought to join those parties with respect to the eighth claim for relief – quiet title, and that claim is subject to dismissal and therefore futile. Harvest's objections to the denial of the above-referenced claims and joinder of the above-referenced parties are overruled.

## B. Harvest's Objection to Denying as Futile the Tenth (Constructive Fraud) and Eleventh (Constructive Trust) Claims

Harvest objects to Magistrate Judge Neureiter's determination that Harvest's constructive fraud and constructive trust claims are subject to dismissal and therefore amendment is futile. Harvest argues that its complaint alone is legally sufficient to state a claim for which relief may be granted. ECF No. 156 at 4.

Harvest's tenth claim for relief is for constructive fraud against Resound, Reid, Crocker, Schaal, and Nash. "To establish a claim for constructive fraud, a plaintiff must show (1) the existence of a duty due to a relationship between the parties; (2) violation of the duty by making deceptive material representations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining

10

party; (4) injury to the complaining party proximately caused thereby; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party. *Barnett v. Elite Properties of Am., Inc.*, 252 P.3d 14, 24 (Colo. App. 2010). Harvest's eleventh claim for relief is for constructive trust against Resound, Reid, Crocker, Schaal, and Nash. "[A] constructive trust can arise when two parties have a 'confidential relationship' that caused one party to act less vigilantly than he or she would have done had he or she been dealing with a stranger." *Sandstead-Corona v. Sandstead*, P.3d 310, 318 (Colo. 2018). To plead and prove the existence of a confidential relationship, "the evidence must give rise to a reasonable inference both that [Reid/Crocker/Schaal/Nash] occupied a superior position over [Steve Valdez] that [Reid/Crocker/Schaal/Nash] used to [Steve Valdez's] disadvantage and that [Steve Valdez] was justified in believing that [Reid/Crocker/Schaal/Nash] would act in [Steve Valdez's] interest." *Mancuso v. United Bank of Pueblo*, 818 P.2d 732, 738 (Colo. 1991).

Upon de novo review, the Court agrees with Magistrate Judge Neureiter that Harvest has not plausibly alleged a close confidential relationship between Steve Valdez and Reid that would rise to the level necessary to find constructive fraud or impose a constructive trust. The Court also agrees with Magistrate Judge Neureiter that any further inquiry into the alleged confidential relationship would require the Court to evaluate the ecclesiastical relationship between two pastors and would impermissibly "tread dangerously close to the line which prohibits delving into and assessing the ecclesiastical and spiritual relationships within a church." *Id.* Additionally, the proposed Second Amended Complaint is completely devoid of allegations supporting the

existence of a confidential relationship (or any personal relationship, for that matter) with Resound's board members—Crocker, Schaal, and Nash. Nor does the Second Amended Complaint identify any specific actions the board members took as part of the alleged constructive fraud or in support of a constructive trust. Indeed, the only allegation of a confidential relationship is the conclusory allegation as to Luke Reid. *See* ECF No. 78-1 ¶ 211 ("Here, Steve Valdez and Luke Reid had a special confidential relationship."). Therefore, Harvest's proposed tenth claim for relief (constructive fraud) and eleventh claim for relief (constructive trust) are subject to dismissal and amendment is futile. Harvest's objections to the denial of the above-referenced claims are overruled.

### C. Harvest's Objections to Denial of Fourth, Fifth, and Seventh Claims Against Nash, Schaal, and Crocker and Denial of Joinder of Nash, Schaal, and Crocker

Harvest objects to Magistrate Judge Neureiter's conclusion that Harvest's claims for individual liability against proposed parties Nash, Schaal, and Crocker as to the fourth, fifth, and seventh claims are subject to dismissal under Rule 12(b)(6). Harvest contends that Nash, Schaal, and Crocker are liable because they signed the letter terminating the pastor-emeritus payment program and sent emails to the congregation about Steve Valdez's personal troubles. Harvest also objects to "the court neglecting to address Harvest's counterclaims against individual Defendant board members for breach of contract, defamation, and tortious interference of business relationships, pursuant to Fed. R. Civ. P. 13(b) and (h)." ECF No. 156 at 9. Harvest argues that its fourth, fifth, and seventh claims and three counterclaims require the joinder of individually named board members. In Harvest's motion for joinder, ECF No. 77, it noted the joinder was to be

considered with respect to the Motion to Amend and the counterclaims filed at ECF No. 71.

As an initial matter, Schaal is a non-diverse party that Harvest seeks to add after removal. Permitting joinder of Schaal would destroy this Court's subject matter jurisdiction. Therefore, under 28 U.S.C. 1447(e), the Court must consider "(1) whether the amendment is intended to destroy federal jurisdiction, (2) whether the plaintiff was dilatory in filing the motion, (3) whether the plaintiff would be significantly injured if the motion to amend were denied, and (4) any other equitable factors." *Pacheco*, No. 21-cv-00875-DDD-KMT, 2021 WL 5548303, at *2 (D. Colo. July 6, 2021) (citing *Telecom Decision Makers, Inc. v. Access Integrated Networks, Inc.*, 654 F. App'x 218, 221 (6th Cir. 2016).

The Court finds there are no grounds for Harvest's claims against Schaal. Indeed, the only allegation attributable to Schaal is the factual allegation that he became lead pastor of the Denver campus after Steve Valdez resigned and was a Resound board member. The proposed Second Amended Complaint and counterclaims are devoid of any specific allegations of actions Schall took that would subject him to personal liability. As discussed in more detail below, Harvest has not been able to muster more than the mere labels, conclusions, and naked assertions of Schaal's liability. This is not enough to state a claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") Denial of joinder would not harm Harvest, because it has

no grounds to bring its claims against Schall in the first place. Thus, the Court denies the joinder of Schaal.

Harvest's fourth claim is for breach of oral contract to create a joint venture between Harvest and Resound. *See* ECF No. 78-1 ¶ 115 ("The Joint Venture was an agreement *between two entities* to collaborate for a common purpose.") (emphasis added). Harvest's fifth claim is for breach of the contractual obligation of good faith and fair dealing with respect to the alleged joint venture agreement. *Id.* ¶ 128 ("[T]he stronger party was *Resound* . . . .") (emphasis added). The Magistrate Judge found that, because neither Nash, Schaal, nor Crocker are alleged to be parties to the alleged contracts, the fourth and fifth claims are subject to dismissal. *See Worman v. Farmers Co-op. Ass'n*, 4 F. Supp. 2d 1052, 1054 (D. Wyo. 1998) ("It is axiomatic that an individual not a party to a contract may not be held liable for a breach of that contract."). The Court agrees that Harvest has failed to state a claim for breach of contract or breach of good faith and fair dealing against Resound's board members where there are no allegations that the board members were party to the contracts.

Magistrate Judge Neureiter also rejected Harvest's seventh claim for unjust enrichment as to proposed parties Nash, Schaal, and Crocker. Under Colorado law, a plaintiff seeking recovery for unjust enrichment must prove: (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for a defendant to retain the benefit without paying. *See DCB Constr. Co. v. Central City Dev. Co.*, 965 P.2d 115, 119-20 (Colo. 1998). But Harvest alleges only that *Resound* unfairly obtained a benefit at Harvest's expense (title to the Subject Property). The Court agrees

with Magistrate Judge Neureiter that the only alleged benefit to Resound's individual board members—reimbursement of expenses—is too attenuated to maintain an unjust enrichment claim. This alleged benefit flows from the alleged benefit that *Resound* received, and any recovery that Harvest would obtain in restitution would come from Resound.

Harvest next argues that Magistrate Judge Neureiter failed to consider the counterclaims asserted against the individual board members. Although Harvest is correct that Magistrate Judge Neureiter failed to address the proposed joinder with respect to the three counterclaims, the Court finds that this error does not change the outcome because the counterclaims for individual liability against Nash, Schaal, and Crocker are also subject to dismissal under Rule 12(b)(6).

Harvest's first counterclaim asserts breach of contract against Resound, Reid, Crocker, Nash, and Schaal and alleges that the parties breached Resound's bylaws by failing to pay lifetime emeritus payments as provided for in the bylaws. *See* ECF No. 71 at 17. But, to the extent Resound's bylaws are a contract, they are a contract between Resound and its shareholders, not between Resound's individual board members and Steve and Danny Valdez. See *P.F.P. Fam. Holdings, L.P. v. Stan Lee Media, Inc.,* 252 P.3d 1, 3 (Colo. App. 2010) ("A corporation's bylaws constitute a contract between the corporate entity and its shareholders."). Thus, the Court denies Harvest's request to join Reid, Crocker, Nash, and Schaal as parties with respect to the first counterclaim.

Harvest's second counterclaim is for tortious interference of business relations against Resound, Reid, Crocker, Nash, and Schaal. Harvest alleges that the Resound

board members entered into an oral joint venture contract with Harvest and the Valdez family. ECF No. 71 ¶¶ 67 ("Harvest Parties and Resound Parties agreed to an oral contract to collaborate efforts and participate in a Joint Venture . . . ."). Harvest then alleges that the Resound board members intentionally interfered with the joint venture contractual relationship. *Id.* ¶ 79 ("Resound parties cause tortious interference with the Joint Venture contractual relationship . . . ."). But under Colorado law, a defendant cannot be liable for interference with its own contract. *See MDM Grp. Assocs., Inc. v. CX Reinsurance Co.,* 165 P.3d 882, 886 (Colo. App. 2007) (citation omitted) ("It is impossible for one party to a contract to maintain against the other party to the contract a claim for tortious interference with the parties' own contract."). Thus, Harvest's allegation that the Resound board members interfered with their own contract fails to state a claim for relief and is subject to dismissal under Rule 12(b)(6).

Harvest's third counterclaim is for defamation against Resound, Reid, Crocker, Nash, and Schaal. In Colorado, the required elements of a defamation claim are: "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by publication." *Williams v. Dist. Ct., Second Judicial Dist., City & Cnty. of Denver*, 866 P.2d 908, 911 n.4 (Colo. 1993). Although Harvest brings this counterclaim against Resound and each individual board member, the only allegations related to defamatory statements are those made in Crocker's emails to the congregation. Without any allegations of Nash, Reid, or Schall making defamatory

statements, Harvest cannot satisfy the first element. Thus, the claim is subject to dismissal as to Nash, Reid, and Schall.

The alleged defamation stems from Crocker's "slanderous emails" sent to "a congregation of 1700 persons." ECF No. 78-1 ¶ 32.   Harvest alleges the email "expos[ed] very embarrassing information about Pastor Steve Valdez that had already been addressed internally within the church." *Id.* ¶ 131. In its counterclaim, Harvest references the emails sent by Crocker and contends that the emails hurt Steve Valdez's reputation. The emails were attached to Harvest's proposed Second Amended Complaint. *Id.;* ECF No. 1-9. The emails describe Steve Valdez's resignation due to his sharing with Resound that "for a period of Covid he was secretly struggling with addiction, this lack of accountability led to unhealthy and unstable behaviors." *Id.* at 1. The email expresses that "the Board was shocked to find these breaches of trust and accountability which ultimately led to moral failures." *Id.* Crocker expressed that Resound wanted to protect Steve Valdez's "privacy and confidentiality" but also wanted to be transparent with the congregation. *See id.* ("While transparency must take place gossip has no place in God's house. For the integrity and future of the Church we consider this a completed chapter for Denver."). The emails reiterated Resound's values. *Id.* ("Resound Church always holds to its values of love and grace . . . a value we hold onto dearly is that Jesus can restore people to safe, healthy and stable lives if they choose to trust Him and make themselves accountable."); ("The Church and Board openly offered to walk with Steve, believing for his restoration not only for his ministry but also affording time and resources for his family to recover."). Crocker's second

allegedly defamatory email also reiterates the communication is directed at the congregation as an ecclesiastical body. *Id.* at 6. ("We are the Church, not a building, not a pastor, not a service, but you and I. We are the eccelsia, the ones called out by God."). In expressing his message regarding Steve Valdez's resignation, Crocker noted that he "pray[s] for wisdom and the leading of the Holy Spirit. I do ask God daily for help in leading."

Resound argued that the emails cannot be a basis for liability for defamation because they are internal ecclesiastical communications sent to the congregation and related to church governance, leadership, membership, and pastoral discipline. The Court agrees. The Tenth Circuit has held that, pursuant to the First Amendment's Free Exercise and Establishment Clauses, "churches have autonomy in making decisions regarding their own internal affairs. This church autonomy doctrine prohibits civil court review of internal church disputes involving matters of faith, doctrine, church governance, and polity." *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 655 (10th Cir. 2002) (citing *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116–17 (1952)). "Before the church autonomy doctrine is implicated, a threshold inquiry is whether the alleged misconduct is rooted in religious belief." *Id.* at 657 (citation omitted).

In *Bryce*, the Tenth Circuit clarified the type of situation where the First Amendment prevents a civil court's involvement. There, the plaintiffs were a youth minister and her same-sex spouse, who sought to impose liability against church leaders for statements made at church meetings and in letters to church members

regarding their same-sex relationship. *Id.* at 652-53. The purpose of the church meetings was: "to address [plaintiff's] employment situation within the church; to provide religious education; to engage in sacred conversation; and to ensure healthy parish communication." *Id.* The Tenth Circuit held that plaintiff's claims were barred by the church autonomy doctrine because the statements "clearly addressed religious topics" and were made "in the context of an internal church dialogue." *Id.* Thus, while plaintiffs "found these statements objectionable" they were "not purely secular disputes with third parties, but were part of an internal ecclesiastical dispute and dialogue protected by the First Amendment." *Id.*

Similarly, in *Seefried v. Hummel*, the Colorado Court of Appeals held that the First Amendment's Free Exercise Clause and Establishment Clause precluded the court from hearing defamation claims brought by church's former senior pastor and its former associate pastor against church, its board of directors, and church members, relating to statements made by board members and church members at meeting convened to discuss whether senior pastor's employment should be terminated. 148 P.3d 184, 189 (Colo. App. 2005). This was true even if the offending statements were secular in nature or if the associate pastor had resigned from his position before the meeting because the allegedly defamatory statements related directly to the church process that resulted in termination of senior pastor's employment. *Id.* The Colorado Court of Appeals found that almost every court that has addressed the issue has found that allegations of defamation are impossible to consider in isolation, separate and apart from a church's decision to terminate the plaintiff's employment. *Id.* (collecting cases).

Here, like in *Bryce* and *Seefried*, it is undisputed that the statements at issue were made in the context of an internal church dialogue and were directly related to church process regarding Steve Valdez's removal as a pastor of Resound. The First Amendment prohibits this Court from delving into internal church disciplinary procedures or the right of the church to engage freely in ecclesiastical discussions with its members. Accordingly, the defamation claim is subject to dismissal and the Court denies joinder of Crocker with respect to this claim. Because all claims against Nash, Crocker, and Schaal are subject to dismissal and therefore futile, the Court exercises its discretion to deny amendment to add such claims and joinder of such parties.

### D. Resound Objection to Recommendation on Ninth Claim (Fraudulent Inducement Against Reid)

Resound objects only to Magistrate Judge Neureiter's determination that Harvest has stated a claim of fraudulent inducement against Reid and Resound based on the allegations that Reid and Resound made false promises to pay Pastors Danny and Steve Valdez lifetime emeritus payment of $50,000 per years, only to stop making payments after the lawsuit was commenced. Resound argues that Harvest has failed to plead fraud with particularity and the claim cannot be premised on a Church's disciplinary decision of pastors.

Upon de novo review, the Court finds that Magistrate Judge Neureiter properly considered the elements and pleading standards for the claim of fraudulent inducement as to the limited allegations surrounding the promise of emeritus payments. *See* ECF No. 149 at 13. Whether Resound and Luke Reid misrepresented the fact that the payments would be lifetime payments to induce the parties to work together and later to

induce Steve Valdez's resignation, only to never make the payments to Steve Valdez and stop payments to Danny Valdez, does not require the Court to delve into ecclesiastical issues. The Court agrees that, at this stage, Harvest's allegations are sufficient to state a claim grounded in fraud. *See* ECF No. 149 at 13. Resound's objection is overruled.

For these reasons, the Court **OVERRULES** Harvest's and Resound's objections and **ADOPTS** the Recommendation.

Accordingly, the Court **ORDERS:**

1. Resound's Partial Objection to the Recommendation, ECF No. 155, is **OVERRULED;**

2. Harvest's Objection to the Recommendation, ECF No. 156, is **OVERRULED**;

3. The Recommendation, ECF No. 149, is **ACCEPTED** and **ADOPTED**;

4. Harvest's Motion to Join Additional Parties Pursuant to Fed. R. Civ. P. 13(h), 19, and 20, ECF No. 77, is **GRANTED IN PART** as to joinder of Luke Reid and **DENIED IN PART** as to joinder of David Crocker, David Schaal, and Anthony Nash as individual defendants and counterclaim individual defendants; and CDF Capital and Colorado Public Trustee – Alex Villagran, as interested party defendants;

5. Harvest's Motion for Leave to Amend its Complaint Pursuant to D.C.COLO.LRiv 15.1(b), ECF No. 78, is **GRANTED IN PART** and **DENIED IN PART**, such that the only claims from Harvest's proposed Second Amended Complaint that proceed are:

- Third Claim for Relief: Breach of Contract – Purchase Sale Agreement Against Resound and Luke Reid

- Fourth Claim for Relief: Breach of Oral Contract – Joint Venture Against Resound and Luke Reid

- Fifth Claim for Relief: Breach of Good Faith and Fair Dealing Against Resound and Luke Reid

- Seventh Claim for Relief: Unjust Enrichment Against Resound and Luke Reid

- Ninth Claim for Relief: Fraud in the Inducement Against Resound and Luke Reid

DATED:  September 29, 2023.

BY THE COURT:

_____

REGINA M. RODRIGUEZ
United States District Judge