**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 22-cv-002285-RMR-NRN

HARVEST WORSHIP CENTER, a Colorado Nonprofit Corporation,

     Plaintiff,

v.

RESOUND CHURCH, an Oregon Non-Profit Corporation,

     Defendant,

RESOUND CHURCH, an Oregon Non-Profit Corporation,

     Counterclaim Plaintiff,

v.

HARVEST CHURCH a/k/a HARVEST WORSHIP CENTER, STEPHEN LEE VALDEZ, VICKIE MAESTAS, and DANIEL VALDEZ,

     Counterclaim Defendants.

---

**ORDER ADOPTING MAGISTRATE JUDGE RECOMMENDATION [ECF 141] REGARDING HARVEST CHURCH'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER [ECF 114], HARVEST CHURCH'S FORTHWITH MOTION FOR EXPEDITED RULING RE: NEW HEIGHTS ACADEMY LEASE [ECF 123], AND RESOUND CHURCH'S ORIGINAL AND RENEWED MOTIONS FOR JUDGMENT ON THE PLEADINGS [ECF 27, 91]**

---

On May 11, 2023, at ECF No. 141, Magistrate Judge N. Reid Neureiter issued a Recommendation on Plaintiff/Counterclaim Defendant Harvest Worship Center's ("Harvest") Motion for Preliminary Injunction and Temporary Restraining Order, ECF No. 114, Harvest's Forthwith Motion for Expedited Ruling Re: New Heights Academy Lease,

ECF No. 123, and Resound Church's ("Resound" Original and Renewed Motions for Judgment on the Pleadings, ECF Nos. 27 and 91. Magistrate Judge Neureiter recommends that Harvest's motions be denied, and Resound's motion be granted. Harvest filed an objection to the Recommendation, at ECF No. 150. The Court has received and considered the Recommendation, the Objection, the record, and the pleadings. After de novo consideration, the Court **OVERRULES** Harvest's objection and **ADOPTS** the Recommendation.

## I.     Background

The factual background of this case is more fully set forth in the Recommendation. *See* ECF No. 141 at 3-6, 15-29. Harvest makes specific objections to both findings of fact and conclusions of law. Accordingly, the Court re-states the undisputed factual background only to the extent necessary to address Defendant's objections and addresses the objected to findings of fact in section IV, *infra*.

This is a dispute between two churches and their respective leadership—Harvest and the Valdez family on one side and Resound and Luke Reid on the other. Harvest, an evangelical church located in Federal Heights, Colorado, was founded by the Valdez family, which includes founding pastor Danny Valdez, his wife Nancy, and their children Stephen ("Steve") Valdez and Vickie Maestas. Resound, founded by Luke Reid, is also an evangelical church with locations in Oregon, Australia, and New Zealand.  At the heart of this case is the question of which party owns the property located at 2300 West 90th Avenue, Federal Heights, Colorado (the "Subject Property").

In 2001, Steve Valdez succeeded his father, Danny, as lead pastor of Harvest. Harvest apparently thrived under Steve Valdez's leadership, with a large congregation averaging more than 440 people at weekend services. In 2007, Steve Valdez met Luke Reid at a church leadership conference. Luke Reid, a fellow evangelical pastor, founded Resound Church in 2011 in Hillsboro, Oregon.  Over the years, the two pastors became close friends, often preaching at one another's churches.  In 2016, Steve Valdez and Luke Reid began discussing the potential of working together in Colorado. The idea was that by pooling their respective resources, they would be able to plant new churches and better spread the word of God.

The plan came together in 2017-18, when the church located on the Subject Property was rebranded from Harvest Worship Center to "Resound Church Denver." In connection with this rebranding, the cash flow and assets of Harvest and Resound were combined and all of Harvest's employees, including Steve Valdez and Vickie Maestas, became Resound employees. The parties also agreed to certain conditions, memorialized in the Bylaws of Resound Church, including that Steve Valdez would be the lead pastor of Resound Church Denver and vice president of the Resound board; Resound board votes would have to be unanimous; Danny and Steve Valdez would be "Pastor Emeritus" of Resound Church Denver, meaning they would be entitled to compensation as long as Resound exists; a unanimous vote of the Resound board would be required to borrow against the Subject Property; and the President and Vice President of the Resound board would have the ability to appoint and remove board members upon unanimous agreement. The parties dispute the form that this combination and rebranding took—

3

Resound argues that it was a merger (more specifically, an "ecclesiastical merger"), and Harvest argues that it was a partnership or joint venture.

On February 17, 2017, as part of the continued movement toward the new Resound Church Denver, Steve Valdez circulated four resolutions to the Harvest board for a vote. The four resolutions were: (1) to sell the property at 2300 W. 90th Ave., Federal Heights, Colorado, "and any and all non-property assets to Resound Church for the amount of $1,054,945.00;" (2) that "any and all existing facility contracts between Harvest Church and any other business be transferred to Resound Church;" (3) to "move all Harvest Church personnel to Resound Church;" and (4) "during the transition from Harvest Church to Resound Church," that "giving made out to Harvest can be transferred to Resound Church." The four resolutions were unanimously approved by the Harvest board. The following week, Harvest assigned its contracts to Resound, including a lease agreement between Harvest (as landlord) and New Heights Academy[1] (as tenant), pursuant to which New Heights Academy leased a portion of the Subject Property to operate a learning center for a public charter school. Thereafter, Harvest and Resound began working toward a sale of the Subject Property from Harvest to Resound.

On February 21, 2018, consistent with the Harvest board's vote a year earlier, Steve Valdez executed a special warranty deed as "Lead Pastor/President [of] Harvest Church." The deed "convey[ed]" to "Resound Church, an Oregon Non-Profit Corporation," the Subject Property described as "Lot 1, Aposento Alto Church, County of Adams, State of

---

[1] The director of New Heights Academy is Nancy Valdez, the mother of Steve Valdez and Vickie Maestas. After the assignment of the lease to Resound, Mrs. Valdez made out and signed every lease payment from New Heights Academy to Resound.

Colorado." Steve Valdez warranted that Harvest conveyed "all the estate, right, title, interest, claim and demand whatsoever of the grantor(s), either in law or equity, of, in and to the above bargained premises, with the hereditaments and appurtenances." Steve Valdez, on behalf of Harvest "for himself, his heirs and personal representatives or successors, d[id] covenant and agree that he shall and will **WARRANT AND FOREVER DEFEND** the above-bargained premises in the quiet and peaceable possession of the grantee(s), his heirs and assigns, against all and every person or persons claiming the whole or any part thereof, by, through or under the grantor(s)." In connection with the conveyance, Steve Valdez also executed a Statement of Authority, dated February 2, 2021, indicating that he had full legal authority from Harvest to convey title to the Subject Property. The special warranty deed was recorded in Adams County at Reception No. 2018000015905 on February 26, 2018.

After the conveyance, Harvest's existing debt on the Subject Property was retired and Resound took out a new loan. Over the course of the next three years, Resound Church Denver continued to serve its congregation in Federal Heights, Colorado. Things took a turn in May 2021, however, when Steve Valdez shared with Luke Reid that he had committed a "moral failing." The relationship between the parties soon began to unravel. Luke Reid viewed Steve Valdez's moral failing as a "profound violation" of Resound's biblical beliefs. As a result of his moral failing, Steve Valdez went through an "accountability board" process, a form of disciplinary action within Resound. Steve Valdez also decided (allegedly at Luke Reid's urging) to step back from his position as lead pastor of Resound Church Denver, and on May 26, 2021, he e-mailed a "letter of resignation" to

the Resound board. Thereafter, Luke Reid shared the details of Steve Valdez's moral failing with others within Resound Church Denver. This resulted in Steve Valdez sending a follow-up e-mail to the Resound board on August 2, 2021, informing the board of his decision to "disassociate [himself] completely from any further relationship with Resound Church." At the end of that month, the Resound board made the decision to remove all staff in the Resound Church Denver leadership, including all members of the Valdez family. All terminated employees had their e-mail access and access to church databases revoked.

Church attendance faltered as a result of the COVID-19 pandemic and the revelations and changes within Resound Church Denver's leadership. Accordingly, Resound decided to sell the Subject Property. In June 2022, Resound entered into a sales contract with World Alive Church for a purchase price of $2,800,000. The sale fell through after Harvest filed and received a temporary restraining order in Adams County District Court, arguing that the Special Warranty Deed is void and that the entire Subject Property should be returned to Harvest. Harvest also recorded a notice of *lis pendens* against the Subject Property. This suit followed.

There have been an inordinate number of motions filed in this case since its inception. At issue here are three motions, and the question of title to the Subject Property is central to all three. Given the state of the case, Magistrate Judge Neureiter elected to hold a full-day evidentiary hearing addressing Harvest's preliminary injunction request, the motion for expedited ruling regarding the New Heights Academy lease, and Defendant Resound's motions for judgment on the pleadings (or C.R.C.P. 105(f)(2) hearing request).

To facilitate and expedite the admission of testimony and evidence, the Magistrate Judge allowed the parties to submit written affidavits or declarations of witnesses. Such affidavits or declarations were admitted into evidence. Witnesses who had submitted affidavits or declarations took the stand and, after some preliminary direct questions, were subject to cross examination.

Magistrate Judge Neureiter then issued this recommendation, wherein he recommended denying Harvest's motions and granting Resound's motion, finding that "title to the Subject Property described as 'Lot 1, Aposento Alto Church, County of Adams, State of Colorado,' rests exclusively with Resound, the title to which will not be affected by judgment on the remaining issues or claims pending in this action." ECF No. 141 at 40. Harvest filed an objection. ECF No. 150.

## II.    Standard of Review

The Court is required to make a de novo determination of those portions of a magistrate judge's recommendation to which a specific, timely objection has been made, and it may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 626(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *see United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("[A] party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.").

### III.     Harvest's Objection to the April 28, 2023 Hearing's Scope

The Court first dispenses with Harvest's objection to the April 28, 2023 hearing (the "Hearing") on the grounds that it was not provided notice of the Hearing's full scope. Specifically, Harvest objects to the Hearing "being held for [Resound]'s renewed rule 105(f)(2) or judgment on the pleadings motion." ECF No. 150 at 3. Harvest argues it was "severely prejudiced" when the Hearing included argument on Resound's motion. *Id.* In support of its argument, Harvest conveniently fails to mention the variety of ways that the Magistrate Judge informed them of the Hearing's full scope well in advance of the Hearing date. Instead, Harvest attempts to convince the Court that it was prejudiced by having "no notice of a consolidated hearing." The transcript of the prior status conference, Magistrate Judge Neureiter's orders regarding the Hearing, and the Hearing transcript tell a different story.

On April 6, 2023, Magistrate Judge Neureiter held a status conference and motions hearing. ECF Nos. 111, 147. At the status conference, the parties addressed Harvest's Forthwith Motion for Expedited Ruling Re: New Heights Academy Lease, ECF No. 123, and Resound's Original and Renewed Motions for Judgment on the Pleadings or Motion to Set C.R.C.P. 105(f)(2) Hearing, ECF Nos. 27 and 91. Harvest also indicated that it would be filing its Motion for Preliminary Injunction and Temporary Restraining Order, ECF No. 114. Magistrate Judge Neureiter then set the pending motions and the anticipated motion for preliminary injunction for hearing on April 28, 2023. ECF No. 147

at 18:11-25, 19:11-21. Magistrate Judge Neureiter stated that he would expect to hear testimony regarding the title issue and whether there is any basis to the fraud claims, and specifically stated that after hearing the arguments and seeing the evidence, he would be issuing a recommendation regarding the judgment on the pleadings. *Id.* at 22:17-19, 23:1-10. The Hearing's scope was clear: "So at our hearing, we'll be addressing the motion for judgment on the pleadings, the anticipated motion for preliminary injunction, a temporary restraining order . . . [s]o we'll also deal with 91 at the hearing, which is the renewed motion for judgment of the pleadings . . . ." *Id.* at 30:22-24, 31:10-14. The Courtroom Minutes regarding the April 6, 2023 status conference also confirm that the hearing "will address all pending motions." ECF No. 111.

At the Hearing on April 28, 2023, Magistrate Judge Neureiter began by reiterating the scope of that day's Hearing: "[W]e have multiple motions that we're going to have a hearing on . . . these include, among other things, the renewed motion for judgment on the pleadings from the defendant Resound Church." ECF No. 148 at 6:1-11. Harvest did not object at that time or at any point during the nine-hour Hearing. The title issue was central to Harvest's motions and Resound's motion, so it is unclear what evidence regarding title Harvest would have held back. During the Hearing, Harvest had the opportunity to fully develop its facts and arguments surrounding the title issue—it put on witnesses and evidence explicitly related to the title issue, including its contention that the parties' relationship was a partnership, testimony from witnesses involved in the sale of the Subject Property, and a CPA witness who testified as to his understanding of the parties' agreements. Indeed, Harvest was allotted the majority of the Hearing's time—

seven of the nine hours—to make its arguments and put on its evidence. Further, and most importantly, the judgment on the pleadings was ultimately decided on the undisputed facts and black letter law. Accordingly, the Court finds that Harvest was not prejudiced by the Hearing's scope, and therefore turns to Harvest's specific objections to the Recommendation.

## IV.     Objections to the Recommendation's Findings of Fact

Harvest enumerates twenty-nine specific objections to the Recommendation's findings of fact. The Court finds that most of Harvest's objections are improper, irrelevant, and/or unfounded. To the extent Harvest challenges Magistrate Judge Neureiter's findings based on evidence presented during the hearing, the Court finds that the Recommendation's findings of fact are properly supported by the evidence. Accordingly, Harvest's objections to the findings of fact are overruled.

Most of the Recommendation's findings of fact are based on the parties' undisputed facts. Unable to make a viable challenge to the undisputed facts, Harvest instead uses its "objections" to criticize Magistrate Judge Neureiter for failing to find certain *disputed* facts in Harvest's favor. For example, Finding 12 states that the cash flow and assets of the two churches were combined, and there was a single bank account for Resound. ECF No. 141 at 16. Harvest objects to this fact, but does not dispute the combination or the fact that Resound maintained a single bank account. ECF No. 150 at 7. Instead, it asserts that Magistrate Judge Neureiter erred by failing to include that "[d]uring the partnership, Luke Reid prevented Harvest from using separate bank accounts, and then Harvest created a new one in 2020." *Id.* But the allegation as to Luke Reid is disputed, and the

allegation that Harvest created a new account in 2020 is immaterial to the quiet title issue. Harvest's objections to Findings 13, 15-18, 21, 23, 24, 29-31, 34-39, 44, 47, 48, 50, 52-54, 56, 58, and 60 are in the same vein as its objection to Finding 12. The Court finds that, to the extent these findings of fact are relevant to the judgment on the pleadings, the Magistrate Judge's findings were properly based on undisputed facts.[2] *See Gomez v. Martin Marietta Corp.,* 1990 WL 293892, at *1 (D. Colo. Mar. 12, 1990), *aff'd,* 50 F.3d 1511 (10th Cir. 1995) (quoting 2A Moore's Federal Practice ¶ 12.15. (2d ed. 1989)) ("A motion for judgment on the pleadings must be sustained by the undisputed facts appearing in all the pleadings, supplemented by any facts of which the court will take judicial notice."). Harvest's attempts to use these "objections" to fact as a means of re-asserting disputed facts and its legal arguments are overruled.

To the extent that Harvest raises objections to Magistrate Judge Neureiter's findings of fact based on the evidence presented during the hearing, the Court finds that, upon de novo review, such findings were supported by the evidence presented. *See Gee v. Estes*, 829 F.2d 1005, 1008 (10th Cir. 1987) ("When objections are made to the magistrate's factual findings based on conflicting testimony or evidence, both § 636(b)(1) and Article III of the United States Constitution require de novo review."). Harvest objections to Findings 22, 27, 28, and 32 are objections based on conflicting testimony or evidence. Upon de novo review, the Court agrees with the Magistrate Judge's findings of fact based on the testimony and evidence presented.

---

[2] Magistrate Judge Neureiter expressly stated that "the Court is convinced by the dictates of Colorado law and the undisputed evidence of the special warranty deed, that title to the Subject Property properly rests with Resound." ECF No. 141 at 13.

Harvest objects to Finding 22, arguing that the Court omitted the fact that Harvest continued to pay on the refinanced loan with its collections and the loan was not a true payoff. The Court finds that the evidence does not support Harvest's objection. Instead, the evidence supports that the collections were made to Resound Church Denver and Resound paid the mortgage on the Subject Property. *See* ECF No. 148 at 276:8-11. Harvest's counsel even conceded at the Hearing that "the congregation collections from Resound continued to make the loan payments . . . ." *Id.* at 30:19-20. Harvest's objection to Finding 22 is overruled.

Harvest objects to Finding 27, contending that it received no money or consideration for its conveyance of the Subject Property and that Magistrate Judge Neureiter erred in saying it did. The Court finds that the Magistrate Judge's finding was supported by the record, as Steve Valdez testified that Resound paid off the existing loan, which was close to $750,000. *Id.* at 243:12-14. Harvest's First Amended Complaint also alleges that the closing paid off some of Harvest's prior loan. ECF No. 6 ¶ 40. It further alleges that "340,979.23 of the purchase price (consideration) [was] not paid." *Id.* ¶ 41. Even taking this as true, this shows that some consideration was paid. If Harvest contends that some of the agreed upon purchase price remains unpaid (which is disputed), this is a basis for a breach of contract action, not quiet title. And even if there was no payment, Harvest's own witnesses, including Steve Valdez, testified to the other benefits that were received as part of the transaction, including the addition of its leadership structure, collaboration opportunities, finances, reach, and technology. *See* ECF No. 114-11, ECF No. 148 at 53:21-54:13. Further, the objection is immaterial to the title issue because, under

Colorado law, a warranty deed is valid and effective "regardless of whether the deed recites valuable consideration or whether valuable consideration has been given for the deed . . . ." C.R.S. § 38-30-113(3).  Harvest's objection to Finding 27 is overruled.

Harvest objects to Finding 28, arguing that Magistrate Judge Neureiter erred in finding that the 50 percent in the purchase agreement was a mistake that was subsequently corrected upon Harvest's receipt of the quitclaim deed for the other 50 percent from the Assemblies of God. The Court finds that the evidence supports Finding 28. The testimony and evidence, including the seller's affidavit attesting that Harvest was the sole owner of the Subject Property at the time it was conveyed to Resound, supports Finding 28. *See* ECF No. 148 at 245:11-25, 245:7-22; ECF No. 122-12. Harvest's objection to Finding 28 is overruled.

Harvest objects to Finding 32, arguing that Magistrate Judge Neureiter erred in admitting and relying on "private hearsay conversations as adopted terms between litigating parties from private email accounts not turned over in discovery, and to which [Resound] was not a conversant or participant." ECF No. 150 at 15. Finding 32 references an email in which Vickie Maestas states, "Our property is owned by Resound alone." ECF No. 122-13. Harvest cites no authority for how the emails between Steve Valdez and Vickie Maestas are "private hearsay." Further, Harvest's contention that Resound was not a conversant or participant is incorrect, as the email chain shows it was forwarded from Vickie Maestas to Luke Reid, among other third parties, in August 2022. *Id.* Harvest's objection to Finding 32 is overruled.

Given the foregoing, Harvest's objections to the Recommendation's findings of fact are overruled. The Court notes, however, that the disputed findings of fact are not relevant or material to the Court's determination as to the judgment on the pleadings for the quiet title issue, which is based only on the undisputed material facts.

## V.   Objections to the Recommendation's Conclusions of Law

Harvest makes five specific objections to the Recommendation's conclusions of law: Harvest objects to (1) the conclusion that the Special Warranty Deed is controlling and resolves the title question, and that Resound alone is the title owner of the Subject Property; (2)  the conclusion that the court cannot determine a constructive trust; (3) the conclusion that Steve Valdez successfully negotiated protections in the form of emeritus payments from Resound[3]; (4) the conclusion, and the bases for the conclusion, that Harvest has not shown a likelihood of success on the merits of its claim to ownership of the Subject Property; (5) the Magistrate Judge's error in not applying the complete standard for judgment on the pleadings. The Court addresses the objections together because they are all essentially objections to Magistrate Judge Neureiter's determination that title to the Subject Property rests exclusively with Resound.

### A.  Standard for Motion for Judgment on the Pleadings Under Rule 12(c)

The Court reviews a motion for judgment on the pleadings pursuant to Rule 12(c) under the same standard as a motion for Rule 12(b)(6). *Adams v. Jones*, 577 F. App'x

---

[3] Harvest raises a three-sentence objection, stating that no facts substantiate the conclusion that Steve Valdez negotiated protections in the form of emeritus payments from Resound. Contrary to this position, Article 14 of Resound Church Denver's Bylaws describe the pastor emeritus title and compensation and specifically states that the founding pastor (i.e., Steve Valdez) and Danny Valdez are to be considered pastors emeritus. ECF No. 126-27 at 10-11. Regardless, the Court finds that this objection is not material to the Order.

778, 781 (10th Cir. 2014). The Court will not grant a motion for judgment on the pleadings "unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* at 782. Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The Court also limits its consideration to the four corners of a complaint, any exhibits attached thereto, and any external documents referred to in the complaint if such document is central to the claim and the parties don't dispute the authenticity of the document." *United States v. Wahdan*, 325 F. Supp. 3d 1136, 1138 (D. Colo. 2018).

Harvest argues that Magistrate Judge Neureiter erred because if he had taken "Harvest's pled facts regarding partnership as true," he could not have granted judgment on the pleadings. Harvest contends that its asserted facts regarding the existence of a partnership do not support a finding that title rests with Resound. The Court disagrees with Harvest's position. Magistrate Judge Neureiter properly accepted all of Harvest's well pled facts as true, and determined that under black-letter property law, title rests with Resound. *See* ECF No. 141 at 13 ("[T]he Court is convinced by the dictates of Colorado law and the undisputed evidence of the special warranty deed, that title to the Subject Property properly rests with Resound."). This determination is not impacted by the disputed facts surrounding Harvest's allegation of a partnership. The judgment on the

pleadings is only as to the quiet title claim. As Magistrate Judge Neureiter noted, "pleadings on Harvest's quiet title claim have closed, and there is no reason to delay ruling on this particular claim . . . ." *Id.* at 32. To the extent factual disputes exist, they do not impact the analysis of the quiet title claim. Accordingly, Harvest's objection to Magistrate Judge Neureiter's application of the standard for judgment on the pleadings as to the quiet title claim is overruled.

### B.  The Special Warranty Deed and Merger-By-Deed Doctrine

Magistrate Judge Neureiter "conclude[d] that under black-letter property law in Colorado, the special warranty deed is controlling and conclusively resolves the title question. Resound alone is the title owner of the Subject Property." ECF No. 141 at 29. The Court agrees with Magistrate Judge Neureiter that "under Colorado law, a recorded, unambiguous deed, is definitive in terms of determining the intentions of the parties, and 'extrinsic evidence to alter[,] vary, explain[,] or change the deed by any such evidence is not permissible.'" ECF No. 141 at 30 (quoting *O'Brien v. Vill. Land Co.*, 794 P.2d 246, 249 (Colo. 1990)). Harvest does not dispute the validity or content of the special warranty deed. It does not dispute that it was executed by Steve Valdez on behalf of Harvest and later recorded in Adams County. It does not dispute that it purports to convey the Subject Property to "Resound Church, an Oregon Non-Profit Corporation." Rather, it disputes that "the deed and those warranties are conclusive regarding title to the Subject Property." This argument is without merit.

First, Harvest contends that the Magistrate Judge erred by failing to determine the nature of the parties' relationship because "[i]t does matter what the intent of the parties

was and what kind of entity relationship existed between them to determine quiet title." ECF No. 150 at 18. Harvest argues that the parties' relationship was a partnership, and that the intent of the parties was to transfer title of the Subject Party to the partnership, not to Resound. Setting aside that there is scant evidence of a partnership, the Court agrees with Magistrate Judge Neureiter that the form of the entity relationship has no bearing on the determination of title because, under Colorado law, the special warranty deed controls. This position is supported by Colorado's general policy regarding title, which expresses Colorado's intent to "render titles to real property and every interest therein more secure and marketable" by construing laws regarding title to real property "with the end in view of rendering such titles absolute and free from technical defects so that subsequent purchaser and encumbrancers . . . may rely on the record title and so that the record title of the party in possession is sustained and not defeated by technical or strict constructions." C.R.S. § 38-34-101. Indeed, the Supreme Court of Colorado has declared it a "universally accepted principle of law that when a deed is unambiguous and unequivocal, the intention of the parties thereto must be determined from the deed itself, and extrinsic evidence to alter, vary, explain or change the deed by any such evidence is not permissible." *O'Brien v. Vill. Land Co.*, 794 P.2d 246, 249 (Colo. 1990) (emphasis added).

Here, the special warranty deed is unambiguous and unequivocal. The special warranty deed identifies the grantor as Harvest Church, a Colorado non-profit corporation and the grantee as "Resound Church, an Oregon Non-Profit Corporation." The pleadings confirm that Resound Church, an Oregon Non-Profit Corporation, is Defendant Resound,

not a partnership. *See* ECF No. 6 at 1, ECF No. 11 at 2. Steve Valdez signed the agreement as the seller and "Lead Pastor/President of Harvest Church." Nowhere in the deed (or in the original purchase agreement, for that matter) do the parties indicate that title is being transferred to Resound in its capacity as a partner or for the existence of a partnership. To the contrary, the undisputed facts reveal that the intent was to sell the Subject Property to Resound, the entity. For example, it is undisputed that Harvest needed board approval to convey the Subject Property. Accordingly, on February 17, 2017, Steve Valdez e-mailed the Harvest board asking them to vote on several resolutions, the first which stated: "We are voting to sell the property at 2300 W. 90th Ave., Federal Heights, CO 80260 and any and all non-property assets to Resound Church for the amount of $1,054,945.00. Please respond yes or no." It is also undisputed that the resolution to "sell the property . . . to Resound Church" was approved by the Harvest board. Thus, the Court agrees with the Magistrate Judge that regardless of whether the parties formed a partnership, the special warranty deed controls and confirms that title to the Subject Property rests with Resound.

Second, Harvest objects to the Magistrate Judge's determination that "the merger-by-deed doctrine mandates that the legal description in the special warranty deed supersedes the purchase agreement." Harvest argues that the merger-by-deed doctrine does not apply here because of mistake and/or fraud. The Court finds this argument equally unavailing.

"Under the doctrine of merger, a deed delivered and accepted as complete performance of a contract for the sale of land merges all prior negotiations and

agreements into the deed." *Colorado Land & Res., Inc. v. Credithrift of Am., Inc.*, 778 P.2d 320, 322 (Colo. App. 1989). "Though the terms of the deed may vary somewhat from those contained in the contract, the deed is determinative of the rights of the parties." *Reed v. Dudley*, P.2d 507, 508 (Colo. App. 1975). Despite this, Harvest insists that the difference between the purchase agreement and the special warranty deed (the difference being that the purchase agreement provided for a conveyance of 50 percent of the Subject Property while the special warranty deed conveyed the entire Subject Property) is a mistake that requires reformation. But the law on merger-by-deed is clear: "When a deed is delivered and accepted as performance of a contract to convey, the contract is merged in the deed. Though the terms of the deed may vary from those contained in the contract, still the deed must be looked to alone to determine the rights of the parties." *Enos v. Anderson*, 93 P. 475, 477 (Colo. 1907).

Further, the difference between the purchase agreement and the deed was sufficiently explained. As Magistrate Judge Neureiter clarified, the purchase agreement provided for 50 percent because, at the time the purchase agreement was executed, Harvest only owned 50 percent of the Subject Property and the Assemblies of God owned the other 50 percent. It is undisputed that, after the purchase agreement was executed, Steve Valdez sought and obtained a quitclaim deed from the Assemblies of God. It is also undisputed that, after Harvest obtained the quitclaim deed, it became the owner of the entire Subject Property. Harvest subsequently conveyed the entire Subject Property to Resound via special warranty deed. This was thoroughly explained in the pleadings, and the evidence supports that Harvest understood the mistake in the purchase agreement

had been resolved prior to finalizing the conveyance. Indeed, Steve Valdez testified that when he went to the Assemblies of God requesting the quitclaim deed, he specifically told the Assemblies of God that Harvest needed to have all of the Subject Property so it could complete the deal with Resound as intended. ECF No. 148 at 245:1-25, 246:5-22. The Court is satisfied that the special warranty deed reflects Harvest's true intent to convey 100 percent of the Subject Property, and the discrepancy in the purchase agreement is therefore not a mistake that warrants reformation or invalidation of the deed.

Separate from the mistake, Harvest argues that the Magistrate Judge erred in finding merger-by-deed because Harvest alleges fraud. But Harvest fails to plead fraud[4], let alone with the particularity required under Fed. R. Civ. P. 9(b). Under Rule 9(b), allegations of fraud must "set forth the time, place, and contents of the false representation, the identity of the party making the false statement, and the consequences thereof." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). Harvest has failed to allege fraud with any level of particularity and only makes the conclusory allegation in its Objection that Luke Reid (who is not a party to this case), "used multiple misrepresentations and fraud to induce Harvest . . . to convey away a multi-million-dollar church property . . . couched as a 'refinance' to fund the partnership." ECF No. 150 at 30. Harvest makes no credible allegations of fraud, even when given the opportunity to present witnesses and evidence regarding the alleged fraud. *See* ECF No. 141 at 13

---

[4] Harvest's First Amended Complaint, ECF No. 6, brings only a fraudulent conveyance claim, alleging that Resound made misrepresentations as part of a scheme to defraud Harvest and divest Harvest of the Subject Property. Harvest has a pending motion for leave to amend, ECF Nos. 77, 78, seeking leave to amend its complaint and assert two additional fraud claims (fraud in the inducement and constructive fraud), alleging that the warranty deed is void due to fraud in the factum. Because the Court finds that title is vested in Resound, it will exercise its discretion to deny leave to amend and add the fraud claims.

("[T]he presentation of evidence and testimony during the preliminary injunction hearing was a usefulness exercise . . . [that] confirmed to the Court's satisfaction (at least for purposes of a preliminary injunction), that Resound's acquisition of title was not accomplished by any fraud or nefarious conduct on the part of Resound or its leader, Luke Reid."). Harvest may regret its decision to convey the Subject Property to Resound, and it may even be able to show that it did not receive what was promised under the contract. In that case, it can seek damages accordingly under its breach of contract or unjust enrichment theories. But there are no facts alleged that would void the special warranty deed. Accordingly, the Court agrees with the Recommendation that under Colorado law, the special warranty deed controls and title therefore rests exclusively with Resound.

### C. Constructive Trust

Notwithstanding the special warranty deed, Harvest argues for constructive trust based on the close confidential relationship between Steve Valdez and Luke Reid. Harvest contends that the Magistrate Judge erred in concluding against a constructive trust because its motion to amend and add the constructive trust claim was still pending, the Magistrate Judge failed to take its facts for a close confidential relationship and how it was abused as true, and Harvest was still awaiting additional discovery on the issue. Harvest also contends that the Magistrate Judge "erred in believing it must delve into religious doctrine to address this claim to examine the close confidential relationship between the two men that existed for years, and before the partnership." ECF No. 150 at 23.

As an initial matter, the Court finds no error with the Magistrate Judge considering the constructive trust issue while Harvest's motion to amend was still pending. Harvest put its allegation of a confidential relationship giving rise to its constructive trust claim at issue in its motion for preliminary injunction, asking the Court to find "that a 'confidential close relationship' existed between Luke Reid and Steve Valdez." Because the preliminary injunction motion was based in part on the claim to a constructive trust, Magistrate Judge Neureiter properly evaluated the merits of the constructive trust claim. *See DigitalGlobe, Inc. v. Paladino*, 269 F. Supp. 3d 1112, 1118 (D. Colo. 2017) ("A movant must show: (1) a likelihood of success on the merits . . . .").

Further, under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court may exercise its discretion to deny a motion to amend if amendment would be futile, among other reasons. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal . . . ." *Dorough v. Am. Family Mut. Ins. Co.*, No. 15-cv-02388-MSK-KMT, 2016 WL 1426968, at *2 (D. Colo. Apr. 11, 2016). Thus, the Court is free to deny Harvest leave to amend and add its constructive trust claim if it finds that the claim is futile. Given the foregoing, the importance of the title issue in this matter, and for the sake of judicial efficiency, the Magistrate Judge properly considered Harvest's constructive trust argument.

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of

the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Id.* (quoting *Beatty v. Guggenheim Expl. Co.*, 225 N.Y. 380, 122 N.E. 378 (1919)). As relevant here, where one party holds a position of superiority over another, or when two parties have a "confidential relationship," a transfer of property obtained as a result of an abuse of those relationships may be set aside. *Id.* Magistrate Judge Neureiter concluded that the Court should not impose a constructive trust because (1) he was "not persuaded that the very friendly relationship between Luke Reid and Steve Valdez rose to the level of a confidential relationship that allowed Luke Reid to take unfair advantage or exert undue influence" and (2) any potential confidential relationship was ecclesiastical in nature, and therefore the First Amendment and neutral principles approach prohibit the judiciary from scrutinizing the ecclesiastical relationship that allegedly warrants a constructive trust.

Harvest takes issue with the Recommendation, arguing that to find the type of confidential relationship necessary to impose a constructive trust, "[t]he court need only to look at how the men behaved together outside of church activities, while in public, on social media, with their families, in their travels, and how Luke Reid was able to exert fraud and undue influence with misrepresentations to induce Steve Valdez and Harvest into compliance with the fraud scheme." ECF No. 150 at 23. But what Harvest alleges is evidence of a friendship between two grown men. It cites no authority whatsoever to support its contention that the nature of the friendship between Luke Reid and Steve Valdez rises to the level required for a Court to impose a constructive trust.

The Court also agrees with the Recommendation's conclusion that delving any further into the question of how much influence Luke Reid had over Steve Valdez would "tread dangerously close to the line which prohibits delving into and assessing the ecclesiastical and spiritual relationships within a church." For example, Harvest's claim that Luke Reid always planned to "steal" the Subject Property from Steve Valdez is only tenable if the Court accepts that Luke Reid had no reason to act as he did, and instead was using Steve Valdez's "moral failing" as a way to "steal" the Subject Property. But that would require the Court to consider whether Luke Reid had valid grounds for his reaction to Steve Valdez's actions, including Luke Reid's alleged push for him to resign. Luke Reid testified himself that Steve Valdez's actions were against his religious beliefs and that transparency to the congregation was necessary. These are decisions and circumstances intertwined with religion and the Court cannot and will not delve into the propriety of religion-based decisions.

Because the Court finds that, under Colorado law, the unambiguous deed vests title in Resound, Harvest has not shown a likelihood of success on the merits of its claim to ownership of the Subject Property. Accordingly, Harvest is not entitled to a temporary restraining order or preliminary injunction. Further, as the owner of the Subject Property, Resound is free to make decisions regarding its lease with non-party New Heights Academy. Thus, Harvest is not entitled to a forthwith order renewing the lease for New Heights Academy.

For these reasons, the Court **OVERRULES** Harvest's objection and **ADOPTS** the Recommendation**.**

Accordingly, the Court **ORDERS:**

1.  Harvest's Objection to the Recommendation, ECF No. 150, is **OVERRULED;**

2.  The Recommendation, ECF No. 141, is **ACCEPTED** and **ADOPTED**;

3.  Harvest's Motion for Preliminary Injunction and Temporary Restraining Order, ECF No. 114, is **DENIED**;

4.  Harvest's Motion for Ruling Regarding New Heights Academy Lease, ECF No. 123, is **DENIED**;

5.  Resound's Motion for Judgment on the Pleadings and Alternative Motion for 105(f)(2) Hearing, ECF Nos. 27, 91, is **GRANTED**;

6.  Judgment on Harvest's claim to quiet tile is entered against Harvest and in favor of Resound; and

7.  Title to the Subject Property described as "Lot 1, Aposento Alto Church, County of Adams, State of Colorado," rests exclusively with Resound, the title to which will not be affected by judgment on the remaining issues or claims pending in this action.

DATED:  September 29, 2023.

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge