IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02285-RMR-NRN

HARVEST CHURCH, a Colorado Nonprofit Corporation,

Plaintiff,

v.

RESOUND CHURCH, an Oregon Non-Profit Corporation,

Defendant.

RESOUND CHURCH, an Oregon Non-Profit Corporation,

Counterclaim Plaintiff,

v.

HARVEST CHURCH a/k/a HARVEST WORSHIP CENTER, STEPHEN LEE VALDEZ, VICKIE MAESTAS, and DANIEL VALDEZ,

Counterclaim Defendants.

## ORDER ON DISCOVERY DISPUTE

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on a discovery dispute. Consistent with this Court's practice standards, the Parties submitted a Joint Statement for Discovery Dispute Conference laying out their respective positions, before the Court heard argument on December 4, 2024. The Joint Statement is found in the record at ECF No. 219-1.

## INTRODUCTION

This is a long-running legal dispute between two churches and their respective pastors. The background has been recited at length in prior court orders and will not be repeated here. *See, e.g.*, ECF No. 141 (Report and Recommendation on Harvest Church's Motion for Preliminary Injunction and Resound Church's Original and Renewed Motions for Judgment on the Pleadings, filed May 11, 2023).

In brief, Harvest Church, with former Pastor Steve Valdez, merged or partnered with Resound Church, led by Pastor Luke Reid, with Resound Church ultimately getting title to a multi-million-dollar Harvest Church property, located north of Denver in Federal Heights, Adams County, Colorado. The transaction that resulted in the transfer of title is part of the underlying dispute. In the now operative Third Amended Complaint, Plaintiffs claim that Mr. Valdez placed unconditional trust in Mr. Reid, who was both a close friend and confidant. Based on that unconditional trust, Mr. Valdez allegedly was duped into signing documents and making agreements that ultimately resulted in Harvest Church losing the multimillion-dollar church property to Resound Church, controlled by Mr. Reid.

Plaintiffs allege that Mr. Reid dissuaded Harvest Church from getting counsel before the execution of the various transaction documents, with Mr. Reid telling Mr. Valdez that hiring counsel would be a waste of church funds. ECF No. 195 ¶ 165. Mr. Reid allegedly gained Mr. Valdez's trust "due to their long friendship." These allegations are cited in support of a claim for breach of the duty of good faith and fair dealing by Harvest Church against Resound Church and Mr. Reid. *Id.* ¶¶ 162–89. There is also a fraud in the inducement claim against Resound Church and Mr. Reid in connection with the acquisition of the Federal Heights church property. *Id.* ¶¶ 216–48. Harvest Church

2

claims that Mr. Valdez and other Harvest Church members justifiably relied on Mr. Reid's alleged false representations in part because "they are both lead pastors of their respective churches, working together at each other's churches for years, and had already formed a long-term close trusting relationship." *Id.* ¶ 237. The Third Amended Complaint also asserts that "Steve Valdez justifiably relied on Luke Reid's material misrepresentations because Steve trusted Luke and loved Luke Reid as a brother." *Id.* ¶ 241. Thus, the close and trusting relationship between Mr. Valdez and Mr. Reid is an issue that has been raised by the pleadings.

## DISCOVERY DISPUTE AND DISCUSSION

The discovery dispute currently before the Court focusses on private text messages between Mr. Reid and Mr. Valdez. Mr. Reid has produced some of those text messages, but certain portions are redacted. Plaintiffs' counsel (also Mr. Valdez's counsel) disputes the propriety of the redactions, claiming that Mr. Valdez should be able to see the entirety of the documents that he either wrote to, or received from, Mr. Reid. Plaintiffs assert that the communications were made in the context of the close friend relationship between Mr. Valdez and Mr. Reid and would support the argument that there was almost a brotherly, trusting relationship between the two men, which would cause Mr. Valdez to lower his guard in connection with the transactions at the heart of this case. In Plaintiffs' counsel words, these communications show "the depth of the relationship between these two men." ECF No. 219-1 at 2.

Mr. Reid, for his part, says that he has redacted a narrow set of text messages between Mr. Reid and Mr. Valdez that "concern a confidential and highly private matter related to one of Mr. Reid's family members." *Id.* at 7. The individual is not a party to this

3

case and the details contained in the redacted messages are irrelevant and disclosure would only function to "inflict personal pain on Mr. Reid and his family." *Id.* Mr. Reid also asserts that the information is privileged and shielded from discovery.  He further asserts that he has already testified and conceded that he and Mr. Valdez had a close and trusting relationship and he shared highly private information with Mr. Valdez. Mr. Reid argues that to the extent Plaintiffs believe that establishing a relationship of trust between Mr. Reid and Mr. Valdez bolsters Plaintiffs' case, they already have discovered sufficient information to prove that point and disclosure of the intimate details of a third-party's mental health is unnecessary. *Id.* at 8.

In support of the arguments that disclosure of the material would be very painful to Mr. Reid and the unnamed family member and the redacted information is privileged, Mr. Reid has submitted an affidavit, ECF No. 219-5, in which Mr. Reid describes a "significant mental health crisis" of one of his family members which caused harm to him and his family member and their relationship and "was one of the worst periods of [Reid's and his] family member's life." ECF No. 219-5 at 2. In this time of "spiritual desolation" and "emotional and psychological distress," Mr. Reid reached out to Mr. Valdez, communicating at times by text message regarding this issue. Mr. Reid claims he did so in part because Mr. Valdez was a pastor on the Resound Church accountability board, which is a formal pastoral body that exists to "provide spiritual guidance and discipline to pastors of Resound Church." *Id.* Mr. Reid claims that he communicated this information to Mr. Valdez "to receive his spiritual guidance and, if necessary, spiritual and church discipline." *Id.* Mr. Reid asserts that compelled disclosure of this information would cause him and his family "extraordinary anguish"

4

and "could cause [his] a family member to relapse into their mental health issue they experienced in 2019." *Id.*

The suggestion that these communications were part of some kind of "church discipline" process supports Mr. Reid's and Resound Church's second argument for why the full content of the texts should not be disclosed. Resound cites Colo. Rev. Stat. § 13-90-107(1)(c), which provides that that a clergy member or minister "shall not be examined without both his or her consent and also the consent of the person making the confidential communication as to any confidential communication made to him or her in his or her professional capacity in the course of discipline expected by the religious body to which he or she belongs." *See* ECF No. 219-1 at 9. Resound Church also claims that discovery of this information would violate the Free Exercise Clause's protection of intra-church communications. *Id.* (citing *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 658 (10th Cir. 2002).

Mr. Valdez has responded with his own affidavit, insisting that Mr. Reid's statements about the texts being related to the accountability board and potential discipline "are untrue." ECF No. 219-3 at 2. In Mr. Valdez's words, "There is no instance when Luke Reid was texting me, or me texting him, where I was acting officially as a member of his accountability board or for such purpose, and none were related to any discipline whatsoever." *Id.* Mr. Valdez explains that "if any accountability board matter were to be at issue, all members of the accountability board would have been notified and texted me, and they were not; a formal discussion would have been held around such alleged issue as well, and none were held." *Id.* Mr. Valdez asserts that "[t]hese texts are conversations we had and are directly relevant to this lawsuit so that I can

5

prove the significant depth and nature of my relationship with Luke Reid. The relationship was a deep friendship, and such relationship is at the heart of our claims for fraud and misrepresentation in this case." *Id.* Per Mr. Valdez, "These texts could reveal information that show why he was so easily able to manipulate and defraud me into believing his misrepresentations about our partnership, our church plans, our joint church buildings, and the joint refinancing of them . . . ." *Id.* at 3.

Based on this factual dispute as to the nature of the communications, their contents, and whether they were arguably part of a church discipline process, I ordered Resound Church to submit the unredacted texts for *in camera* inspection. *See* ECF No. 219 at 1. I have reviewed the disputed unredacted texts *in camera*.

I conclude that the disputed texts were not part of any church discipline process. There is nothing in the contents of the disputed texts that remotely comes close to any reference to the accountability board or refer in any way to potential church discipline. Instead, the texts appear to be what Mr. Valdez says they are: they reflect two very close friends sharing and commiserating over deeply personal and intimate issues. One friend is seeking solace and comfort from another about a personal family issue, nothing more and nothing less. Thus, I conclude that the texts are not covered by any statute that might protect communications made to or by a clergyman in his or her professional capacity in the course of discipline.

I also conclude that, even if the texts were privileged, the disclosure of large portions of the texts (those unredacted portions) waived any clergy member privilege that might have covered the texts to begin with. If Resound Church feels the texts were governed by the clergy discipline statute cited above, then Resound Church should not

6

have produced *any* portion of the texts and should have asserted the privilege. Resound Church cannot reveal substantial portions of the texts and then claim privilege over just certain portions. Voluntary disclosure of part of a privileged communication is a waiver as to the remainder of the privileged communication about the same subject. *Int'l Tel. and Tel. Corp. v. United Tel. Co. of Fla.*, 60 F.R.D. 177, 185–186 (M.D. Fla. 1973).

To the extent the texts reflect heartfelt communications between two close friends regarding intimate personal issues, they arguably do support Mr. Valdez's argument that there was a very close, personal, and intimate bond between these two men, rising potentially to the level of a confidential relationship, and therefore the transaction between the two men (or the two churches that the men each led) was not an arms-length transaction. *See* Colo. Civ. Jury Instruction 26:4 (Confidential Relationship-Defined) ("A confidential relationship exists between parties to a transaction if the parties' relationship is such that one is induced to relax the care and vigilance one ordinarily would exercise in dealing with a stranger."); *First Nat'l Bank v. Theos*, 794 P.2d 1055 (Colo. App. 1990) (explaining that a confidential relationship may also arise if: (1) one party has taken steps to induce another to believe that it can safely rely on the first party's judgment or advice; (2) one person has gained the confidence of the other and purports to act or advise with the other's interest in mind; or (3) the parties' relationship is such that one is induced to relax the care and vigilance one ordinarily would exercise in dealing with a stranger).

It may well be that Mr. Reid has admitted that he shared deeply personal thoughts and feelings with Mr. Valdez. But Mr. Reid asserts in his affidavit that the sharing of these thoughts was in the context of a pastor-to-pastor accountability board,

7

rather than a personal, friend-to-friend basis. *See* ECF No. 219-1 at 8 ("Mr. Reid shared this information with Mr. Valdez because, at the time, Mr. Valdez was a pastor on Mr. Reid's Resound Church accountability board."). It appears that Resound Church and Mr. Reid refuse to stipulate to the fact that Mr. Valdez seeks to prove: that the relationship between these two men was so close that the two men treated one another like brothers—a near confidential relationship. Instead, it suggests that Mr. Reid will dispute at trial that the relationship was so close that it may have caused Mr. Valdez to lower his guard when entering into the church merger/partnership transaction with Mr. Reid.

For the foregoing reasons—because no privilege attaches to these disputed text communications, and because they are arguably relevant to the nature of the relationship between these two men—I conclude that unredacted versions of the text messages should be produced.

However, Mr. Reid and his family members' privacy concerns also have merit. Therefore, these documents should be produced as Confidential and Attorney's Eyes Only. Beyond Plaintiffs' counsel, the only Plaintiff who shall be entitled to see the unredacted versions of the texts is Steve Valdez, so that he can provide more context to his lawyers about what was being communicated and why. No copies of these unredacted documents or their contents shall be distributed or communicated beyond Plaintiffs' counsel and Mr. Valdez. In addition, none of these disputed text documents (redacted or unredacted) shall be submitted or filed on the public docket. Nor shall any of these documents be introduced into evidence in any public proceeding without first seeking leave of Court. Any filings—such as motions for summary judgment or exhibits

in support of such motions—that might seek to include reference to these documents or attach these documents shall be filed under restriction. Any public versions must have appropriate redactions so as not to include the substance of these communications. Violation of this Order or public dissemination of these materials in violation of this Order will result in sanctions and possibly a citation for contempt.

**So ORDERED this 19th day of December, 2024.**

_____
N. Reid Neureiter
United States Magistrate Judge

9